FARMER, J.
This contract to sell commercial real estate failed to close. The buyer sued the seller for specific performance and other equitable relief. It also sued other defendants for intentional interference with the contract and slander of title. The claims were tried simultaneously to a jury (money damages) and the judge (equitable claims). As Murphy’s law would predict, the jury went one way and the trial judge the other. Buyer won the money damages claims; seller prevailed on the equitable claims. Both sides appeal. We reverse the money damages but affirm the trial judge’s decision on the equitable claims.
We sketch the facts. Denton (seller) and Good Way (buyer) entered into a contract for the sale of commercial property, a trailer park, in June 2003. The agreed price was $400,000. There were then two mortgages on the property. Buyer was given a lengthy “investigation period” to ascertain suitability for certain purposes: *105 changing the use as a trailer park to a gas station/convenience store. No closing date was initially specified; but at the end of the investigation period, which could be extended, a closing date would be fixed.
Nine months later (March 2004) the parties modified the agreement and provided that buyer could record a memorandum of contract in the public records disclosing the following terms. Buyer’s investigation period was extended for 90 days. Buyer agreed to pay off the second mortgage, in return for which seller gave buyer a second mortgage. The purchase price was reduced by the amount of the second mortgage given to buyer.
Nearly 22 months after contracting and an extensive additional period for buyer’s investigation, seller invoked the “time-is-of-the-essence” clause and set the closing date for April 11, 2005, at the offices of a designated closing agent. Seller warned that the contract must be fully closed that day. Buyer appeared for the closing and tendered partial payment to the closing agent at that time. Buyer failed to tender the balance of $844,000 due on the purchase price by the close of business that day. Buyer attempted to tender the balance on the following day in the afternoon, but seller rejected it on grounds the contract was terminated for non-performance at the closing.
Also on the following day, seller quit-claimed title on the property to a land trust, which in turn conveyed it to a pension trust, both having the same trustee. The mortgagees on the first and third mortgages also transferred their interests to the trust.
Buyer sued seller, the third mortgagee and her husband, as well as both trusts and the trustee, making different claims against different defendants. Against the seller, buyer sought specific performance of the sale contract, to foreclose the second mortgage, and a declaratory judgment in its favor. As against the third mortgagee and the trustees of both trusts, buyer sued for tortious interference with the sale contract. Buyer also sued the third mortgagee and her spouse for slander of title to the land.
On both tort claims, the jury found in favor of buyer and. awarded substantial money damages. Defendants moved for directed verdicts and for judgment in accordance with prior motions for directed verdict (JNOV). They also moved to set aside the damages verdicts on all money damages claims for lack of critical evidence on specific factual elements.
The trial judge made separate rulings on the motions. As to liability on the tortious interference claims, the court denied a directed verdict. As to damages on the tortious interference claims, the court granted directed verdicts on all claims for lost profits and increased construction costs. As to damages for the loss of any increase in the value of the property, the court granted both a limited directed verdict as well as a new trial and remittitur by which it reduced such damages to $100,000. On liability for the slander of title claims the court granted a directed verdict, concluding that buyer lacked standing to claim slander of title for land it did not own.
Later the trial judge entered final judgment on the equitable and declaratory judgment claims. Finding that buyer failed to deliver the balance due on the purchase price on the date of closing, the court denied specific performance of the contract. The court found no evidence of any mutual agreement to extend the closing until the next day. Buyer was entitled to foreclose the second mortgage, but it should not recover pre-judgment interest or attorneys fees because it failed upon *106 demand to provide the seller-mortgagor with the necessary information as to those sums for a payoff. Finally the court found that the third mortgage was valid and enforceable.
In sum, buyer was entitled to recover $100,000 on the tortious interference claim from the trustees. In equity buyer could foreclose the second mortgage only as to the principal sum of $51,000 but could have no other relief.
Trial judges may grant directed verdicts and JNOV when there is utterly no evidence in the record supporting an essential element of a claim or defense which the jury might lawfully have accepted. Because these motions present a purely legal issue, appellate judges owe no deference to the trial court’s decision. Review is de novo.
As to the motion for directed verdict on liability for tortious interference with the contract, the trustee contends that evidence clearly shows the quit-claim deeds were given only after buyer failed to close on the day fixed for closing. Nor is there any evidence of interfering before the closing. He argues that when buyer failed to tender the price at closing, the contract was breached by buyer, and seller could now sell his land to someone else. Because the contract was no longer execu-tory, he contends, there could be no tor-tious interference with it.
Buyer offered no competent evidence of any tortious conduct by any defendant until the day after the contract failed to close. Even then the substance of its evidence is merely that the trustee offered to buy the property on the same terms and conditions. Because the circumstances could be reasonably understood by the trustee as making the property once again available when the closing failed to consummate, the trustee’s offer on the day after is not competent to prove an act capable of interfering with an executory contract. We therefore hold that evidence of any attempt to interfere is lacking. Hence it was error to deny seller’s motion for a directed verdict as to liability on the intentional interference with contract claims.
As to the equitable claims, we find no error by the trial judge. In his findings of fact, he found no evidence of a mutual agreement to extend the closing until the following day. The issue of extending the closing until the following day involves buyer’s contention that the closing agent appeared to acquiesce in such an extension. The real question, though, is whether seller ever manifested any assent to such an extension or ever gave authority to the closing agent to do so.[1]
There is no testimony offered by anyone of any representation or acknowledgement by seller that the closing agent was authorized to act on his behalf at closing. After an “investigation period” that extended beyond the specific provisions of the contract even as modified, seller was entitled to set a closing date. In doing so, seller expressly invoked the “time-is-of-the-essence” provision and specified April 11th as the closing date. Although seller himself did not personally attend the closing on April 11th, he had previously notified the closing agent that he would present himself to deliver the required deed when such a transfer of title was ready at *107 closing on April 11th. Buyer failed to tender the full balance of the sale price at the April 11th closing.
On appeal buyer contends that the closing agent agreed to extend the closing until the following day for the purpose of buyer tendering the funds necessary to close. It argues that the closing agent was acting on behalf of the seller in so doing and that he had at least apparent authority to do so.
The supreme court has explained that:
“The authority of an agent to bind a principal may be real or it may be apparent only, and members of the public acting in good faith may rely on either, unless in the case of apparent authority the circumstances are such as to put a reasonable person on inquiry. By apparent authority is meant, such authority as the principal wrongfully permits the agent to assume or which the principal by his actions or words holds the agent out as possessing. Apparent authority rests on the doctrine of estoppel and arises from the fact of representations or actions by the principal and a change of position by a third person who in good faith relies on such representations or actions.”[2] [e.s., c.o.]
Apparent authority of an agent must necessarily rest, therefore, on some representation or assertion by the principal.[3]
Buyer argues evidence showing that the closing agent, who is a lawyer, had previously represented the seller in other transactions. It acknowledges, however, that another lawyer was representing seller in connection with this contract. Nevertheless, buyer urges that it could reasonably take the closing agent’s willingness to accept a tender of closing funds on the following day as impliedly authorized by the seller, who in fact selected the closing agent for this transaction.
A closing agent generally owes a duty to both contracting parties only to supervise the closing in a reasonably prudent manner.[4] Here buyer argues essentially that conduct of the closing agent supports the appearance of the requisite authority. But in comparable factual circumstances, one court rejected functionally the same argument as follows:
“Although the bank seemingly relied on Turner’s representations with regard to the loans, these were not Safeco’s representations concerning Turner’s agency for Safeco. Rather, Turner made these representations in his capacity as counsel for Neder and for himself as a borrower. He did not hold these positions because he could issue title insurance for Safeco. The record reflects that the bank made the written loan commitments prior to Turner’s use of his Safeco agency to issue title commitments and policies.”
Sec. Union Title Ins. v. Citibank Fla., 715 So.2d 973, 975-76 (Fla. 1st DCA 1998). We accept this reasoning as establishing that a closing agent does not, as such, become an agent of either contracting party for purposes of enforcing the rights of that party under the contract.
*108 The evidence shows that any representation about extending the closing to the following day was made by the closing agent, not by seller. As we have seen, the closing agent had only the authority to conduct the closing. A closing agent with only such authority cannot reasonably be understood to be empowered by a contracting party to negotiate changes to the terms of the contract in the absence of specific representations by that party to that effect. To repeat, buyer cites no such express representation by seller.
Moreover, in this case the evidence is not disputed that the day of closing was made essential by the seller. Because the seller insisted on enforcing the deadline, it is not reasonable to expect that the closing agent would be apparently authorized to extend it. The trial judge was well within the law to reject buyer’s evidence as legally insufficient to demonstrate an agreement to extend closing until the next day and instead to deny specific performance on account of the failure of the buyer to tender the funds required by contract on the day specified for closing.[5]
The equitable claim for specific performance — tried only to the judge and not to the jury — shares a common fact with the jury’s tort claim: namely, whether the closing date was extended to the following day for buyer to tender the balance of funds due on the contract. Buyer argues error for the trial judge to refuse to accept the jury’s implicit finding that the closing agent had authorizedly extended the closing date. In making that finding, the jury had been instructed with the familiar civil standard of proof: the “greater weight of the evidence.”
Seller argues that the chancellor was required to employ a more exacting burden than the jury in considering the specific performance claim. As the supreme court has explained:
“In this jurisdiction the rule is settled beyond question ‘that in a suit for specific performance of an alleged contract for the sale of real estate the plaintiff must do more than merely prove his case by a preponderance of the evidence; ... he must prove the contract as alleged in his complaint by competent and satisfactory proof which must be clear, definite and certain.”[6] [e.s.]
The trial judge found no clear, definite and certain proof of an extension of the closing. We agree that the record fails to suggest any such evidence, and certainly none with that high degree of reliability. Because of the difference in the burden of proof, the chancellor was able to reach a different finding on this factual issue than the jury did.
For the foregoing reasons, the foreclosure of the second mortgage is affirmed, but we reverse the award of money damages to the buyer and direct the entry of judgment in favor of the seller on all tort claims.
GROSS, C.J., and STEVENSON, J., concur.

. See Goldschmidt v. Holman, 571 So.2d 422, 424 n. 5 (Fla.1990) (holding it essential to existence of agency relationship that principal make representation or acknowledgment of agent’s authority to act); Orlando Exec. Park, Inc. v. Robbins, 433 So.2d 491, 494 (Fla.1983), receded from on other grounds, Mobil Oil Corp. v. Bransford, 648 So.2d 119 (Fla.1995) (same).

. Stiles v. Gordon Land Co., 44 So.2d 417, 421-22 (Fla.1950).

. Fidelity & Cas. Co. v. D.N. Morrison Constr. Co., 116 Fla. 66, 156 So. 385, 387, appeal dismissed, Fidelity & Cas. of N.Y. v. Coley & Peterson Inc. of Va., 293 U.S. 534, 55 S.Ct. 348, 79 L.Ed. 642 (1935).

. Florida Bar v. Hines, 39 So.3d 1196, 1200 (Fla.2010); Land Title of Cent. Fla., LLC v. Jimenez, 946 So.2d 90, 93 (Fla. 5th DCA 2006); Sommers v. Smith & Berman P.A., 637 So.2d 60 (Fla. 4th DCA 1994); Askew v. Allstate Title & Abstract Co., 603 So.2d 29 (Fla. 2d DCA 1992).

. See MasTec Inc. v. TJS. LLC, 979 So.2d 285, 291-92 (Fla. 2d DCA 2008) (in the absence of buyer’s tender of purchase price at closing, seller never obligated to convey title).

. Miller v. Murray, 68 So.2d 594, 596 (Fla.1953); accord Invego Auto Parts Inc. v. Rodriguez, 34 So.3d 103, 104 (Fla. 3d DCA 2010).