POLEN, J.
Appellant, Prime Homes, Inc. (“Prime Homes”), appeals the final judgment entered by the trial court in favor of appel-lee, Pine Lake, LLC (“Pine Lake”). The final judgment ordered that Prime Homes had breached a contract with Pine Lake and awarded Pine Lake monetary damages. The court also imposed a vendor’s lien on the property. The contract in question contained a clause which the trial court declared ambiguous, but after allowing parol evidence to be admitted, the trial court modified the language and found that the ambiguity was resolved. We agree with the trial court as to its resolution of the contractual language and affirm as to that point, but we disagree with the trial court’s imposition of a vendor’s lien and, therefore, reverse as to that point and remand for entry of a modified final judgment.
Pine Lake and Oslo Road Ventures, Ltd. (“Oslo Road”) entered into a contract under which Pine Lake would purchase an eighty-three acre parcel of land from Oslo Road. The property Pine Lake agreed to purchase was located in Vero Beach, Indian River County, Florida and was zoned as residential in part and commercial in part. Under the contract, Pine Lake was to make deposits in the amount of $375,000 toward the sale amount and the parties were to close on the property on July 27, 2005. However, on July 5, 2005, before the closing date, Pine Lake assigned its interest in the contract to Prime Homes to avoid forfeiting and losing its entire deposit.
During negotiations, Prime Homes stated that it conceptualized 188 lots on the property and it was going to seek approval from Indian River County to create as many 70' x 120' lots as possible for the residential development it was building. The parties reached an agreement as to a price per lot cost that Prime Homes would pay the seller, Oslo Road. The parties determined during their negotiation that *1150 Indian River County would likely approve, at minimum, 166 lots. With that number in mind, the parties multiplied the cost per lot times the minimum number of approved lots, then subtracted the original purchase price from that amount, resulting in a down payment of $229,574.68 to be paid by Prime Homes to Oslo Road.
The agreement for assignment of sale and purchase agreement (“assignment agreement”) states in relevant part:
2.a. Purchase Price on Assignment. The purchase price for the Assignment (the “Assignment Price”) payable by Purchaser to Seller is the sum of Two-Hundred-Twenty-Nine-Thousand-Five-Hun-dred-Seventy-Four-68/100 ($227,-574.68) Dollars, plus a sum equal to all deposits Seller has previously tendered to Owners (the “Deposits”) (for which Purchaser shall receive full credit against the purchase price under the Main Contracts) ....
b. Additional Purchase Price. In addition to the Assignment Price set forth above, Purchaser shall pay to Seller an additional amount derived at by multiplying $46,382.98 times the number of lots having dimensions of 70 x 120, which exceed 166 lots (Additional Assignment Fee) on the site plan for the Property Purchaser ultimately has approved by Indian River County (Approved Site Plan). By way of example only, should the Approved Site Plan have 180 lots of 70 x 120 lots, the Additional Assignment Fee shall be $649,361.72 (14 lots in excess of 166 lots x $46,382.98).
The Purchase Price (together with the Additional Purchase Price, [a]s applicable) shall be paid to Seller within five (5) days from the date day that Purchaser obtains final site plan approval for the development of the Property from Indian River County. Additionally, and simultaneously with the payment of the Purchase Price to Seller, Purchaser shall also convey to Seller the Commercial Property identified by the Parties as an exhibit hereto.
Additionally, section twelve of the assignment agreement provided:
Default by Purchaser. If Purchaser shall default in the performance of any of the terms and conditions of this Agreement, Seller shall have, as its remedy, the right to proceed in equity to enforce specific performance against the Purchaser hereunder, if such remedy is sought by Owner against Seller. In the event that a default occurs after the Closing of the Main Contract, Seller shall have the right to record a lien on the Residential Property as security for the payment of the Purchase Price.
On July 22, 2005, Prime Homes closed on the property by purchasing the eighty-three acre parcel directly from Oslo Road. Prime Homes took out a mortgage on the property to assist with the financing of the project for which they purchased the land. Almost a year later, Prime Homes received approval of its preliminary plat application by Indian River County for 178 lots. Out of the 178 approved lots, 144 of those lots had dimensions that were equal to or greater than 70' x 120'.
When Portofino Preserve, a company to which Prime Homes assigned its right, title, and interest, did not pay twelve times the cost per lot to Oslo Road, Pine Lake filed suit against Prime Homes, alleging breach of the parties’ assignment agreement. Pine Lake amended its complaint and, in its second amended complaint, it added a count seeking imposition of a vendor’s lien against the property to secure payment of the purchase price. Moreover, *1151 Pine Lake sought to relate the vendor’s lien back to July 17, 2006, the date on which the alleged breach occurred. In its answers and affirmative defenses, Prime Homes denied its obligation to pay Oslo Road for the twelve lots over 166 because 166 of the approved lots were not specifically measured at 70' x 120' and final approval had not been received.
A non-jury trial was held. It was undisputed that several of the lots were less than 70' x 120'. A witness for Pine Lake testified that the assignment agreement contained a mistake where the word “typical” was missing in regards to the 70' x 120' lot, meaning that a lot that was slightly smaller would be “typically” 70' x 120' and count toward the 166 minimum. Pine Lake also provided that preliminary plat approval is equivalent to final site plan approval because it means the County Board of Commissioners approved the lots and verified that a project is allowed. In addition, Pine Lake admitted that the approval is subject to changes, including lot numbers and dimensions.
Prime Homes moved for a directed verdict after Pine Lake’s case in chief was presented. The motion was denied. When Prime Homes began to present its case, Pine Lake advised the trial court that it “would be seeking a vendor’s lien relating back to June 5, 2005, the date of the Assignment Agreement.” A final judgment was entered in favor of Pine Lake, finding that section 2(b) of the assignment agreement was ambiguous. Based on extrinsic evidence, the court found that the assignment agreement required Portofino Preserve to pay the additional amount for the twelve lots over 166. The court further found that the preliminary plat approval was final enough to trigger the obligation of Prime Homes’ assignee, Por-tofino Preserve, to pay Oslo Road within five days. The court ruled that Prime Homes breached its assignment agreement by failing to pay the additional purchase price and convey commercial property back to Pine Lake. The court determined that the assignment agreement required reformation to reflect the true intent of the parties — to pay an additional price for each “typical” 70' x 120' lot that exceeds 166 lots. The court also imposed a vendor’s lien against the property, relating “back to ‘the time of the transaction from which it sprung,’ ” which the court found to be the date of the assignment agreement— July 5, 2005. Prime Homes filed a motion for new trial, rehearing, and reconsideration, which the trial court denied. This appeal followed.
A trial court’s interpretation of a contract is reviewable by this court under a de novo standard of review provided the language is clear and unambiguous and free of conflicting inferences. In such case of ambiguity, the existence of the ambiguity is a question of law, and the ambiguity must be resolved as a question of fact.
Soncoast Cmty. Church of Boca Raton, Inc. v. Travis Boating Ctr. of Fla., 981 So.2d 654, 655 (Fla. 4th DCA 2008) (quoting N. Star Beauty Salon, Inc. v. Artzt, 821 So.2d 356, 358 (Fla. 4th DCA 2002)). Ambiguities exist when a document can reasonably be interpreted as having more than one meaning. Smith v. Shelton, 970 So.2d 450, 451 (Fla. 4th DCA 2007). A contract is to be construed “in accordance with the plain meaning of the words contained therein.” Barakat v. Broward Cnty. Hous. Auth., 771 So.2d 1193, 1195 (Fla. 4th DCA 2000) (citing Burns v. Barfield, 732 So.2d 1202, 1205 (Fla. 4th DCA 1999)). There are two types of ambiguities — patent and latent. Nationwide Mut. Fire Ins. Co. v. Pollinger, 42 So.3d 890, 892 (Fla. 4th DCA 2010). Patent ambiguities are on the face of the document, while *1152 latent ambiguities do not become clear until extrinsic evidence is introduced and requires parties to interpret the language in two or more possible ways. Id. If the terms of the contract are unambiguous, “the court is bound by the plain meaning of those terms.” Emerald Pointe Prop. Owners’ Ass’n v. Commercial Constr. Indus., Inc., 978 So.2d 873, 877 (Fla. 4th DCA 2008).
Parol evidence is inadmissible to contradict, vary, or modify terms which are unambiguously contained within a written agreement. See Leaseco, Inc. v. Bartlett, 257 So.2d 629, 632 (Fla. 4th DCA 1971). Failure to dictate that 70' x 120' was a minimum threshold led to various interpretations of the provision by the parties. Without the introduction of extrinsic evidence to clarify the intent of the parties and more clearly state the terms of the assignment agreement, ambiguities would have remained. We hold that parol evidence was admissible to assist the court in determining the meaning of the contractual language where ambiguities existed as to the parties’ intent regarding the provided dimensions. Here, a representative of Prime Homes interpreted that the language meant “70' x 120' or above.” However, an expert witness who testified on Prime Homes’ behalf interpreted the lot dimensions differently, providing that the correct way to determine whether Oslo Road was owed an additional payment was to multiply the dimensions to see if the area exceeded 70' x 120', or 8400 square feet.
In rewriting the provision in the assignment agreement, the trial court added the word “typical” so that the provision read “having typical dimensions of 70' x 120'.” It is within the purview of the appellate court’s authority to construe a contract in a way that is “ ‘contrary to that of the trial court.’ ” Thomas v. Vision I Homeowners Ass’n, 981 So.2d 1, 2 (Fla. 4th DCA 2007). It is clear to this court that the original provision was ambiguous, as it stated that lots of 70' x 120' which exceeded 166 required additional pay, rather than stating that those dimensions were a minimum threshold. Therefore, we hold that the trial court reached the correct result — that the provision was ambiguous and required parol evidence and reformation to clearly state the intent of the parties. The expert witness testified that adding the word “typical” would resolve ambiguities and that 70' x 120' was not intended to be used as an exact measurement. The trial court agreed and added the word “typical” in an attempt to clarify the clause. We hold that the trial court properly accepted parol evidence and correctly interpreted the parties’ intentions. We, therefore, affirm as to this point.
Next, we consider the propriety of the vendor’s lien that the trial court imposed against the property.
A vendor’s lien is placed on property to secure an unpaid amount of the purchase price. See Refram v. Porter, 343 So.2d 1343, 1345 (Fla. 2d DCA 1977). Vendor’s liens arise through agreements for deed, as the vendor essentially holds title to the property to secure payment of the agreed upon purchase price. Jasper v. Orange Lake Homes, Inc., 151 So.2d 331, 333 (Fla. 2d DCA 1963). Implied vendor’s liens “may arise after conveyance of the title.” Id. The implied vendor’s lien was
[F]ounded upon the equitable presumption that, where the vendor has parted with his title and taken no security for the payment of the purchase money, the purchaser ought not in conscience be allowed to keep it without paying the consideration. The lien thus created is not a specific, absolute charge upon the property, but only an equitable right of the vendor to resort to the property in *1153 case the purchase money is not paid. Such a lien is not the result of an agreement between the vendor and vendee, and is simply an equity raised by the courts for the benefit of the former.
Alabamar-Florida, Co. v. Mays, 111 Fla. 100, 149 So. 61, 65 (1933).
A vendor’s lien comes from the court of equity and serves as security to a vendor for the unpaid amount of the purchase price of a piece of land. Golden v. Woodward, 15 So.3d 664, 669 (Fla. 1st DCA 2009). The lien is not agreed upon by the parties and, instead, is imposed by the court incident to a debt owed to the vendor. Id. Prime Homes argues that Pine Lake is not a vendor and, instead, is an assignor that could not fulfill its obligation to the vendor and, therefore, assigned its right, title, and interest away. Prime Homes also contends that Pine Lake “never achieved vendor status necessary to legally create a vendor’s lien.” Pine Lake asserts that a vendor’s lien may arise for a party, albeit not an actual vendor, that conveyed equitable interest in the land.
Pine Lake relies on the language from Mays, which states that a vendor’s lien may arise in favor of a third party who is “practically” a vendor, rather than “actually” a vendor. Mays, 149 So. at 65. In Mays, the parties were the purchaser and a creditor of the vendor who was going to receive payments from the purchaser to satisfy a debt owed. Id. The creditor was entitled to a vendor’s lien because the grantor and grantee agreed that the purchase money was going to be paid to a third person. Id. This case is distinguished from Mays. Here, Prime Homes is the assignee and Pine Lake is the assign- or. “An assignment has been defined as ‘a transfer or setting over of property, or of some right or interest therein, from one person to another.’ ” Cont’l Cas. Co. v. Ryan Inc. E., 974 So.2d 368, 376 (Fla. 2008). Once the property is transferred to another, the assignor no longer has the right to enforce interest because the as-signee obtained all rights to the assigned property. Id. Pine Lake, through assignment, is no longer a party to the action and, instead, merely retains liability as an assignor. The assignment agreement expressly stated that the purchase price for the property is not owed to Pine Lake, but to Oslo Road, the seller of the property. Pine Lake assigned its right, title, and interest in the property to Prime Homes because it could not fulfill its obligation to Oslo Road.
We, therefore, hold that the trial court erred in attaching a lien to the property where Pine Lake was not a vendor — neither practically nor actually — and the assignment was not meant to serve as security for a debt.[1]
Accordingly, we affirm in part and reverse in part. While we agree with the trial court as to its resolution of the contractual language and affirm as to that point, we disagree with the trial court’s imposition of a vendor’s lien and, as such, must reverse as to that issue. We remand this cause for the trial court to enter a modified judgment pursuant to our holding.

Affirmed in part; Reversed in part.

TAYLOR and HAZOURI, JJ., concur.

. On appeal, there was an issue as to when the vendor’s lien would have arisen. Because we hold that the vendor’s lien was improperly imposed, it is unnecessary for this court to consider the date to which it related back.