SUAREZ, J.
Regions Bank, formerly known as Union Planters Bank, N.A., First Source Bank, Peninsula Bank, and Ocean Banks (collectively “the banks”) appeal from a final judgment entered in favor of Maroone Chevrolet, L.L.C. We reverse in part and affirm in part.
This case arose from a business relationship between InterAmerican Car Rental, Inc. and Maroone Chevrolet for the purchase of InterAmerican’s fleet of rental vehicles. The relationship existed from August 1999 until September 2002, when InterAmerican ceased operations. The parties’ practice followed the norm in the industry. Maroone would receive an order for a group of vehicles from InterAmeri-can, and would place an order for the vehicles with the manufacturer. The manufacturer would ship the vehicles directly to InterAmerican but invoice Maroone. Maroone would in turn invoice InterAmeri-can for the amount due on the vehicles delivered. Additionally, Maroone would prepare applications for certificates of title on the vehicles, including any financing lien holders designated by InterAmerican. Upon InterAmerican’s receipt of the vehicles, it would submit a draw request to a financing bank, which would issue a check for the purchase money loan on the subject *254 vehicles payable solely to Maroone or payable jointly to Maroone and Inter American. The checks now at issue were then delivered to InterAmerican.
InterAmerican ultimately went out of business and was unable to repay money owed to Maroone. Consequently, Ma-roone sued InterAmerican’s depository bank and financing banks for statutory and common law conversion and negligence, alleging mishandling of the financing checks.[1] Specifically, Maroone claimed Regions Bank accepted for deposit into InterAmerican’s operating account, and the financing banks issued payment on, nine financing checks made payable: 1) to Maroone; or, 2) to both InterAmerican and Maroone, but were not properly endorsed by Maroone. Five checks, issued by Peninsula Bank to both payees, were included in the latter category: Check No. 7005252 for $655,180.85, Check No. 7006426 for $446,297.87, Check No. 7006452 for $439,346.21, Check No. 7006454 for $387,767.66, and Check No. 7003036078 for $406,070.85. Four checks, issued solely to Maroone, were included in the first category. The first, Check No. 620761, issued by Ocean Bank for $72,361.65, and three other checks issued by First Source Bank: Check No. 67154 for $120,802.43, Check No. 70340 for $516,064.00, and Check No. 71337 for $25,803.20.
On its negligence claim, Maroone sought $4.8 million in consequential damages for InterAmerican’s outstanding receivables based on its claim that Maroone would have stopped doing business with Inter-American sooner if the banks had timely alerted Maroone to InterAmerican’s practice of forging Maroone’s endorsement.
After a bench trial, the lower court entered the final judgment appealed from which denied the consequential damages claim as speculative, but found that the banks breached their duty of ordinary care in their handling of the checks which included Maroone as a payee. It also found that InterAmerican had directly paid Ma-roone for some of the financed vehicles, and accordingly deducted that amount from the damages awarded. The final judgment awarded Maroone: $406,070.85, representing the face amount of Peninsula Bank Check No. 3036078; $25,803.20 for the face amount of First Source Bank Check No. 71337; and $72,361.65 for the face amount of Ocean Bank Check No. 620761. Additionally, the trial court awarded Maroone prejudgment interest on each of these awards at the rate of nine percent beginning in 2002.
The banks now appeal that judgment. They contend the trial court erred in entering judgment in favor of Maroone on the single-payee checks because Maroone never proved InterAmerican was its agent for purposes of delivery. As to the remaining checks, appellants raise several errors, all of which we conclude are merit-less. Lastly, appellants claim the trial court erred in the prejudgment interest award. We address the claims regarding the single-payee checks and prejudgment interest in this opinion.
The appellants do not challenge the lower court’s findings of fact. Thus, because appellants’ arguments rest on questions of law, our review is de novo. See Miami-Dade County v. Wilson, 44 So.3d 1266, 1270 (Fla. 3d DCA 2010).
We turn first to the argument that Maroone’s statutory conversion claim fails *255 for lack of delivery. This claim is based on section 673.4201(l)(b), Florida Statutes (1997), which provides in relevant part: “An action for conversion of an instrument may not be brought by ... [a] payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.” The banks contend Maroone did not meet the requirements for statutory conversion because it did not prove the subject checks were delivered to either Maroone or its agent. The parties’ briefs concentrate on whether actual or merely constructive delivery is required to satisfy the statute.[2] We conclude instead that application of the statutory exclusion turns on the existence of an agency relationship between Ma-roone and InterAmerican. The question is whether, in receiving the single-payee checks, InterAmerican was acting as Ma-roone’s representative.
It is well settled that an agency relationship may be express or implied from apparent authority, and the burden of proving the agency belongs to the party asserting it. See, e.g., City Nat’l Bank of Detroit v. Basic Food Indus., Inc., 520 F.2d 336, 337 (5th Cir.1975) (“[A]n agent’s authority need not be conferred in express terms, but may be implied under justifying circumstances.”); Roessler v. Novak, 858 So.2d 1158, 1162 (Fla. 2d DCA 2003) (“Although some agencies are based upon an express agreement, a principal may be liable to a third party for acts of its agent which are within the agent’s apparent authority.”); Robbins v. Hess, 659 So.2d 424, 427 (Fla. 1st DCA 1995) (“The party alleging the agency relationship bears the burden to prove it....”). Moreover, because “apparent authority is a form of estoppel [which arises] from ‘the authority a principal knowingly tolerates or allows an agent to assume, or which the principal by his actions or words holds the agent out as possessing,’ ” apparent agency exists only where the principal creates the appearance of authority. Jackson Hewitt, Inc. v. Kaman, 100 So.3d 19, 31 (Fla. 2d DCA 2011) (quoting Owen Indus., Inc. v. Taylor, 354 So.2d 1259, 1261 (Fla. 2d DCA 1978)). Therefore, the focus is on the conduct or words of the principal, not those of the purported agent or the understanding of the person dealing with the purported agent: However, “the third party’s reliance on the purported agent’s apparent authority must be reasonable.” Izquierdo v. Hialeah Hosp., Inc., 709 So.2d 187, 188 (Fla. 3d DCA 1998); see also Jackson Hewitt, 100 So.3d at 32; Roessler, 858 So.2d at 1161-62 n. 3.
Here, the allegations in Maroone’s complaint and the testimony at trial incorrectly focused on the understanding of the purported agent, InterAmerican, and the entity dealing with the purported agent, the financing banks, rather than the conduct of the principal, Maroone. The complaint alleges the financing banks delivered checks payable to Maroone to InterAmerican for the benefit and use of Maroone. Representatives of the financing banks and InterAmerican generally confirmed this fact. However, Maroone asserted below that it was unaware Inter-American was accepting financing checks on its behalf. Maroone could not have authorized InterAmerican to do something of which it was unaware. Thus, not surprisingly, the appellants presented no evidence that Maroone did anything to create an agency by placing apparent au *256 thority with InterAmerican. On the contrary, other than to avoid the statutory delivery exclusion, Maroone cannot claim InterAmerican as its agent because to do so would legitimize InterAmerican’s actions, including the forging of Maroone’s endorsements. This would be unreasonable.
Accordingly, we conclude Maroone’s claims on the single-payee checks fail for lack of delivery. We, therefore, reverse that part of the final judgment awarding Maroone $25,803.20 for the face amount of First Source Bank Check No. 71337 and $72,361.65 for the face amount of Ocean Bank Check No. 620761.
Maroone presented the following evidence at trial regarding the two-payee checks:
A. Peninsula Bank.
Check No. 7005252 for $655,130.85 — -In August 1999, InterAmerican ordered sixty-two Hyundai cars, naming Peninsula Bank as the lien holder. In September 1999, Peninsula Bank delivered to InterAmeri-can a check payable to InterAmerican and Maroone for sixty-one of the sixty-two cars. InterAmerican typed Maroone’s name on the back of the check and deposited it into InterAmerican’s operating account with Regions Bank. In December 1999, Peninsula Bank delivered to Inter-American another check payable to Inter-American and Maroone in payment of the final car. This time, InterAmerican endorsed the check and delivered it to Ma-roone along with InterAmerican’s check payable to Maroone for twenty-one of the sixty-two cars in the order. Between December 30, 1999, and April 1, 2000, Inter-American sent three checks to Maroone in payment for the remaining cars. This order, therefore, was paid in full.
Check No. 7006Í26 for $U6,297.87 — In March 2002, InterAmerican ordered twenty-three Chevrolet cars, naming Peninsula Bank as the lien holder. Later that month, Peninsula sent a check payable to InterAmerican and Maroone in the amount of $446,297.87 for the order. InterAmeri-can again typed Maroone’s name on the back of the check and deposited it into its account. In June 2002, InterAmerican sent a check to Maroone for eighteen cars from this order. Later that same month, it appears InterAmerican paid the manufacturer directly for two other cars. At trial, the banks’ expert testified that Ma-roone’s ledgers showed a credit for the balance owed on the remaining cars. Thus, the evidence demonstrated the order tied to this check was also paid in full.
Check No. 7006U52 for $¿39,34,6.21 — In April 2002, InterAmerican placed an order for an additional twenty-three Chevrolets with Peninsula Bank as the lien holder. Peninsula sent a check for that order to InterAmerican in the amount of $439,346.21 payable to InterAmerican and Maroone. InterAmerican negotiated the check by typing Maroone’s name on the back and depositing it. In June 2002, InterAmerican sent a check to Maroone that included payment for one of the cars in this order. InterAmerican later sent a second check to Maroone which included payment for another seventeen cars in this order. Additionally, two cars from this order were repaid by InterAmerican’s June check sent in payment for eighteen cars from the March order. The banks’ expert again testified that Maroone’s ledgers showed InterAmerican paid for the remaining three cars in this order. Thus, no outstanding balance remained in connection with this check.
Check No. 7006m for $387.767.66 — .In-terAmerican made a second order in April that consisted of twenty Chevrolet cars, naming Peninsula Bank as the lien holder. The same month, Peninsula gave a check *257 to InterAmerican in the amount of $387,767.66, payable to InterAmerican and Maroone for the order. InterAmerican typed Maroone’s name on the back and deposited the check. InterAmerican then paid Maroone for two of these cars through the June check, which included payment for the initial April order. Inter-American sent another check in June to Maroone for another seven cars from this order. Maroone’s ledger showed full payment on the remaining balance of this order.
Check No. 7003036078 for $406,070.85— In June 2002, InterAmerican ordered nineteen Ford vehicles, naming Peninsula as the lien holder. Peninsula sent a check for this order to InterAmerican in the amount of $406,070.86, which was payable to Inter-American and Maroone. InterAmerican again negotiated the check by typing Ma-roone’s name on the back and deposited it into its account. There is no evidence in the record indicating Maroone received payment for any of these cars. Therefore, the full amount of $406,070.85 remained owing from this order.
It is axiomatic that a plaintiff must prove damages resulting from the defendant’s wrongdoing to be entitled to recover. See, e.g., Bank of Miami Beach v. Neuman, 163 So.2d 333, 333 (Fla. 3d DCA 1964) (“It is fundamental that a person is not entitled to recover damages if he has suffered no injury.”). To prove a pri-ma facie case of conversion, the plaintiff must show evidence of damage, not just liability. See, e.g., Saewitz v. Saewitz, 79 So.3d 831, 833 (Fla. 3d DCA 2012); accord Star Fruit Co. v. Eagle Lake Growers, 160 Fla. 130, 33 So.2d 858, 861 (1948) (reversing because “[t]here was no evidence introduced concerning value” of the specific items allegedly converted). Moreover, the plaintiff must present evidence regarding a “reasonable certainty” as to its amount of damages, and a plaintiffs claim cannot be based upon “speculation or guesswork.” Saewitz, 79 So.3d at 833-34. The plaintiff seeking damages must “adduce evidence ... from which [the trier of facts] could properly determine” the extent of the plaintiffs alleged economic damages. See, e.g., U.S.B. Acquisition Co. v. Stamm, 660 So.2d 1075, 1079 (Fla. 4th DCA 1995).
Because the record here is devoid of evidence supporting damages attributable to the banks’ mishandling of the subject financing checks, with the exception of Peninsula Bank Check No. 7003036078, we affirm the award of damages only to the extent of the amount of this check, $406,070.85, plus any prejudgment interest on this amount. The remaining amount is reversed because there was no evidence to support it. We conclude the trial court properly rejected the claim for consequential damages as speculative.
Lastly, the trial court did not err in calculating prejudgment interest. The amount of prejudgment interest is an element of the plaintiffs damages, and thus is incorporated into the amount of the judgment in cases in which prejudgment interest is due. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 215 (Fla.1985). The interest compensates the plaintiff for the loss of use of the amount awarded, and thus interest accrues from the date the money was due until the date of the judgment. Id. (“[T]he loss itself is a wrongful deprivation by the defendant of the plaintiffs property.”).
Under Florida law, the rate of both prejudgment and postjudgment interest is set by statute. § 687.01, Fla. Stat. (1994); § 55.03, Fla. Stat. (2003). Section 687.01 refers to section 55.03, Florida Statutes (2003), for the rate to be used for prejudgment interest where no contractual interest rate applies. The governing ver *258 sion of section 55.03 provides that Florida’s Chief Financial Officer shall set the interest rate on January 1 of each year and that “[t]he interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid.” § 55.03(1), (3), Fla. Stat. (2003). The same should apply to prejudgment interest. Once the rate is obtained based on the date of loss, it should remain the same. See Genser v. Reef Condo. Ass’n, 100 So.3d 760, 762-63 (Fla. 4th DCA 2012) (applying a fixed rate to prejudgment interest calculations under section 55.03, Florida Statutes (2003)). Thus, the trial court properly determined prejudgment interest.
Accordingly, we reverse the final judgment award of $25,803.20 (for First Source Bank Check No. 71337) and $72,361.65 (for Ocean Bank Check No. 620761). We affirm the award of $406,070.85 (for Peninsula Bank Check No. 7003036078) and affirm the award of prejudgment interest, but remand for calculation of prejudgment interest consistent with this opinion.
Affirmed in part, reversed in part, and remanded.

. InterAmerican maintained its operating account at Regions Bank. Peninsula, Ocean, and First Source Banks provided InterAmeri-can with financing for their vehicle purchases.

. It seems clear that constructive delivery to a payee’s agent or copayee is sufficient. See Attorney's Title Ins. Fund, Inc. v. Regions Bank, 491 F.Supp.2d 1087 (S.D.Fla.2007) (discussing why "delivery” encompasses both physical and constructive delivery); see also Racso Diagnostic, Inc. v. Cmty. Bank of Homestead, 735 So.2d 519, 520 (Fla. 3d DCA 1999).