DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICK CLAYTON,**
Appellant,

v.

**DON POGGENDORF** and **MARILYN THOMAS,**
Appellees.

No. 4D17-488

[February 21, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard L. Oftedal, Judge; L.T. Case No. 502015CA003114XXXXMB.

James D. Tittle and M. Daniel Logan of Tittle, Kairalla & Logan, PL, West Palm Beach, for appellant.

Marshall J. Osofsky of the Law Office of Paul A. Krasker, P.A., West Palm Beach, for appellees.

WARNER, J.

In this appeal of a final judgment enforcing a settlement agreement, appellant contends that the trial court erred in concluding that notice of late payment sent to the attorney who represented him in the underlying litigation was sufficient notice to appellant to accelerate the debt due under the settlement agreement. He also claims that the court erred in finding the agreement ambiguous and taking testimony from the appellees to explain their view of the settlement agreement and amounts due. We hold that the court did not err in concluding that the attorney who accepted notice was acting with apparent authority, but the court erred in determining that the agreement was ambiguous as to the amounts due.

Appellant Clayton purchased a business from appellees Poggendorf and Thomas, executing a stock purchase agreement obligating Clayton to make payments to appellees. When he failed to make payments, appellees filed suit. That litigation resulted in a settlement agreement between the parties. The agreement provided for a schedule of payments to be made by appellant to appellees. Specifically those provisions stated:

WHEREAS, the Parties agree to fully and completely resolve all claims by and between them and hereby mutually release and waive any and all claims they had, have, or may have in the future in any way related to the purchase and sale of Sun Dome, the Contract, the Promissory Note and the Litigation, and agree to voluntarily dismiss their claims in the Litigation under the following terms:

1. Payments to Plaintiffs: In full settlement of this dispute, Clayton will make payments to Thomas and Poggendorf as follows ("Settlement Payment"):

A.) A down payment of Thirty Thousand Five Hundred and 00/100 Dollars ($30,500.00) concurrently with the signature of this Agreement;

B.) Periodic Payments to Plaintiffs as follows:

$4,592.51 by September 1, 2015;
$4,592.51 by October 1, 2015;
$4,592.51 by November 1, 2015;
$4,592.51 by December 1, 2015;
$4,592.51 by January 1, 2016;
$4,592.51 by February 1, 2016;
$4,592.51 by March 1, 2016;
$4,592.51 by April 1, 2016

Payments of $3,592.51 on the first day of each month from May 1, 2016 through the last payment on April 1, 2022.

The parties agree that the Settlement Payment is sufficient and adequate consideration for this Agreement.

Clayton shall wire transfer all periodic payments hereunder to Plaintiffs' TD Bank bank account [Routing number and account number omitted].

Time is of the essence for all payments hereunder. However, Clayton shall be entitled to five (5) calendar days' notice of any late payments. There shall be no further requirement of any written notice for any material breaches or defaults hereunder.

2

**Breach for Non-Payment and Acceleration and Consent Judgment:** Clayton's failure to may any payment hereunder when due, or within five calendar (5) days of written notice of the late payment, time being of the essence, shall entitle Plaintiffs to file a motion with the Court seeking entry of an agreed Consent Judgment for the total amount of $**235,629.80** plus interest at 5.5% less any payments received up to the date of the breach under this Agreement.

The agreement contained typical provisions explaining that the agreement embodied the full agreement between the parties and all representations were merged into the agreement, which could not be modified except by written agreement signed by all parties.

The parties thereafter filed a joint stipulation for dismissal, with the court retaining jurisdiction to enforce the settlement agreement. Clayton made the initial $30,500 payment and then made several periodic payments. On January 1, 2016, however, he failed to make the periodic payment. On January 5, 2016, Attorney Jason Maier, acting on behalf of Poggendorf and Thomas, emailed to Clayton's attorney in the litigation, James Tittle, a notice of nonpayment with five days opportunity to cure, advising Clayton of the default. The notice was sent via email. Counsel for Clayton responded the next day from a different email address and advised Maier:

> Jason: A TD Bank wire has been sent, please advise if it is not received by January 7th.
>
> My understanding is that the bank did not process remote wire transfers over the weekend. Thanks and please let me know when the wire arrives.

Following this email, Poggendorf and Thomas received payment. Thereafter, Clayton failed to make a periodic monthly payment on March 1. On March 7, 2016, counsel for Poggendorf and Thomas emailed to attorney Tittle another notice of default and notice to cure regarding Clayton's failure to pay. Thereafter, Clayton wired the March payment on March 11, 2016.

In April and June 2016, Clayton again did not send timely payments, and Maier sent an email notice to Tittle on April 7, 2016, and June 6, 2016, advising of the default. As with the prior notices, Clayton wired payments to Poggendorf and Thomas within the five-day cure time. In each of these emails, there was a notation that the email was being sent

to Tittle in his capacity as attorney for Clayton. Maier asked that if Tittle was no longer representing Clayton to advise him, and he would send a letter directly to Clayton. There was no response from Tittle or Clayton.

On July 1st when Clayton did not send the payment, Maier again sent the notice of late payment to Tittle. This time, however, no payment arrived within the five day cure period. As a result, Maier filed a motion for entry of consent final judgment against Clayton pursuant to the terms of the Settlement Agreement. Maier sent an email to Tittle and attached a proposed final judgment asking that Clayton agree to its entry. Four days later, Tittle responded. He stated that he had been out of town and asked if they could schedule a telephone conference for the next day, which occurred. The day after the phone call, Tittle sent an email advising that he was not representing Clayton, but then followed up later that same day with an email advising that he had been retained to represent Clayton. Tittle indicated that there was a problem with the notice and the calculations in the proposed final judgment and that an evidentiary hearing would be needed. Maier, on behalf of Poggendorf and Thomas, then moved for an evidentiary hearing to obtain a final judgment.

At the evidentiary hearing, Clayton argued that he had not received proper notice of late payments, because they were sent to Tittle, who was not representing him at the time of the notice of default. However, based upon the various email correspondence, as well as testimony, the court found that Poggendorf and Thomas had complied with the notice provision of the Agreement by sending the notices to Tittle. As to the amounts, over objection the trial court allowed Thomas to explain how the amounts in the settlement agreement were calculated, and from that evidence concluded that the agreement was ambiguous as to whether the initial payment of $30,500 should be deducted from the Consent Final Judgment Amount. The court determined that it should not be deducted. The court then entered final judgment for $184,519.68 plus interest. The judgment was calculated by deducting periodic payments made from the Consent Final Judgment amount set forth in the settlement agreement. The court did not deduct the $30,500 initial payment. From this judgment, Clayton appeals.

Clayton argues that the court erred in enforcing the settlement agreement when he had not received proper notice of late payment pursuant to the agreement. He contends that notice was required to be sent to him and not Tittle, who he claimed was not his attorney after the termination of the litigation. The court, however, decided that Clayton had received notice through Tittle which complied with the Settlement Agreement. Because we conclude that there was competent substantial

4

evidence to support the court's finding that Tittle acted with apparent authority of Clayton when dealing with the notices of default, the court did not err in enforcing the agreement.

It is axiomatic that an agent has the authority to bind a principal. Even where there is no express agent/principal relationship, a principal may be bound by the acts of an agent acting with apparent authority. In *Stiles v. Gordon Land Co.*, 44 So. 2d 417, 421-22 (Fla. 1950), our supreme court explained apparent authority as follows:

> The authority of an agent to bind a principal may be *real* or it may be apparent only, and members of the public acting in good faith may rely on either, unless in the case of *apparent* authority the circumstances are such as to put a reasonable person on inquiry. By apparent authority is meant, such authority as the principal wrongfully permits the agent to assume or which the principal by his actions or words holds the agent out as possessing. Apparent authority rests on the doctrine of estoppel and arises from the fact of representations or actions by the principal and a change of position by a third person who in good faith relies on such representations or actions.

(citations omitted); *see also Denton v. Good Way Oil 902 Corp.*, 48 So. 3d 103, 107 (Fla. 4th DCA 2010). Apparent authority arises from the authority a principal knowingly tolerates or allows an agent to assume, or which the principal by his actions or words holds the agent out as possessing. *Regions Bank v. Maroone Chevrolet, L.L.C.*, 118 So. 3d 251, 255 (Fla. 3d DCA 2013). "[A]pparent agency exists only where the principal creates the appearance of authority." *Id.* The focus is on the conduct of the principal, not the agent. *Id.*

Although Clayton asserts that he, as the principal, did nothing to give Tittle apparent authority to act for him as his agent, the trial court found to the contrary, and there is competent substantial evidence to support its judgment. As Poggendorf and Thomas point out, four notices of default were sent in six months prior to the July default which triggered the acceleration. After attorney Maier sent the January 2016 default notice to attorney Tittle, the principal (Clayton) responded by wiring the required amounts. Tittle followed this payment up with an email to Maier to make sure the payment was received. After each of the next three notices was sent to Tittle, Clayton acted appropriately by making the required payment within the five day cure period, thus showing by his conduct that Tittle had authority to receive the notice on his behalf. Each email specifically

5

asked Tittle to advise Maier if he was no longer representing Clayton. Thus, whether or not Tittle was formally retained to represent him, by Clayton's conduct in curing the default each time a notice of default was sent to Tittle, he vested Tittle with the authority to accept the notices of default on which Poggendorf and Thomas relied in good faith.

Apparent authority rests on the doctrine of estoppel. Estoppel requires: 1) representation of a material fact by the party estopped (Clayton) to the party claiming the estoppel (Poggendorf and Thomas) that is contrary to the fact later asserted by the estopped party; 2) reliance on that representation by the party claiming the estoppel; and 3) the party claiming estoppel detrimentally changed their position due to such reliance. *Zurstrassen v. Stonier*, 786 So. 2d 65, 68-69 (Fla. 4th DCA 2001). Clayton, by his conduct in allowing Tittle to accept the notices of default, represented that the notices of default complied with the Settlement Agreement. Poggendorf and Thomas clearly relied on that representation by continuing to send the email notices to Tittle. Finally, Poggendorf and Thomas changed their position by not sending the notices directly to Clayton. The trial court did not err in finding that Poggendorf and Thomas had complied with the provisions of default under the settlement agreement.

With respect to the amount of the final judgment, Clayton argues that the trial court erred in concluding that the Settlement Agreement was ambiguous as to the deduction of the initial payment of $30,500 from the Consent Judgment amount. We agree with Clayton that there was no ambiguity, and the court erred in failing to reduce the Consent Judgment by the initial payment.

In *Nationstar Mortgage Co. v. Levine*, 216 So. 3d 711, 715 (Fla. 4th DCA 2017), we addressed what is meant by an ambiguity in an agreement:

> An agreement is ambiguous if as a whole or by its terms and conditions it can reasonably be interpreted in more than one way. *See Fla. Power & Light Co. v. Hayes*, 122 So. 3d 408, 411 (Fla. 4th DCA 2013) (quoting *Miller v. Kase*, 789 So. 2d 1095, 1097-98 (Fla. 4th DCA 2001)). Contractual ambiguities are either "patent" or "latent." *Prime Homes, Inc. v. Pine Lake, LLC*, 84 So. 3d 1147, 1151 (Fla. 4th DCA 2012).
>
> "Patent ambiguities are on the face of the document, while latent ambiguities do not become clear until extrinsic evidence is introduced and requires parties to interpret the language in two or more possible ways." *Id.* at 1151–52. A

6

patent ambiguity is intrinsically apparent on the face of the document due to "the use of defective, obscure, or insensible language." *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995). A latent ambiguity, on the other hand, "arises when the language in a contract is clear and intelligible, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two or more possible meanings." *Riera v. Riera*, 86 So. 3d 1163, 1166 (Fla. 3d DCA 2012) (quoting *GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Sys., Inc.*, 51 So. 3d 1243, 1245 (Fla. 5th DCA 2011)); *see also Taylor v. Taylor*, 183 So. 3d 1121, 1122 (Fla. 5th DCA 2015) ("A latent ambiguity exists where the language of an agreement is facially clear but an extrinsic fact or extraneous circumstance creates a need for interpretation or reveals an insufficiency in the contract or a failure to specify the rights or duties of the parties in certain situations."); *Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC*, 915 So. 2d 657, 659 (Fla. 2d DCA 2005) (explaining that a latent ambiguity can only be "brought to light when extraneous circumstances reveal 'an insufficiency in the contract not apparent from the face of the document' " (quoting *Hunt v. First Nat'l Bank*, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980))).

As noted in *Emergency Assocs. of Tampa, P.A. v. Sassano*, with respect to patent ambiguities,

> Florida courts have consistently declined to allow the introduction of extrinsic evidence to construe such an ambiguity because to do so would allow a trial court to rewrite a contract with respect to a matter the parties clearly contemplated when they drew their agreement. The end result would be to give a trial court free reign to modify a contract by supplying information the contracting parties did not choose to include.

664 So. 2d at 1002 (citations omitted). Indeed, the Supreme Court put it more bluntly in *Hamilton Constr. Co. v. Bd. of Pub. Instruction of Dade Cty.*, 65 So. 2d 729, 731 (Fla. 1953):

> The parties selected the language of the contract. Finding it to be clear and unambiguous, we have no right – nor did the lower court – to give it a meaning other than that expressed in

it. To hold otherwise would be to do violence to the most fundamental principle of contracts.

On the other hand, latent ambiguities arise where an extrinsic or collateral fact make the contract ambiguous. "If a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations, then the occurrence of such condition or situation reveals an insufficiency in the contract not apparent from the face of the document." *Hunt,* 381 So. 2d at 1197.

Reviewing the contract, the language is unambiguous. As set forth above, Paragraph 1 of the Settlement Agreement starts with a representation that the payments listed in that paragraph are the "Settlement Payment." That consists of both the initial payment of $30,500 as well as the periodic payments, listed in 1(A) and 1(B) respectively. The sentences and paragraphs which follow the enumeration of the specific amounts of payments do not pertain solely to 1(B), as argued by appellees. For instance, the second sentence states: "The parties agree that the **Settlement Payment** is sufficient and adequate consideration for this Agreement." (emphasis added). The Settlement Payment consisted of both the initial payment as well as all of the periodic payments. The provision on breach, which is bolded in the original agreement, states that if Clayton fails to pay *any* payment within five days of notice of nonpayment, Plaintiffs may file "a motion with the Court seeking entry of an agreed Consent Judgment for the total amount of $235,629.80 plus interest at 5.5% *less any payments received* up to the date of breach *under this Agreement.*" (emphasis added). The Consent Judgment amount is thus reduced by *any* payment under the agreement, which would include the $30,500. There is nothing ambiguous in the language of the agreement, and to limit the amounts reducing the Consent Judgment amount to only those under paragraph 1(B) would require the court to ignore the specific language of the agreement. If the parties had intended to deduct only the periodic payments, they would have said "any periodic payment."

Before determining the issue of ambiguity, the trial court allowed Thomas to testify to the settlement negotiations and how the amounts were calculated for the settlement agreement. This evidence was not "extrinsic" to the contract, as is required to clarify a latent ambiguity. Instead, it went to the heart of the negotiation of the agreement. Then the court relied on this parol evidence to determine that the agreement must be ambiguous, because the Plaintiffs would not be made whole if the $30,500 payment were deducted. The court erred by looking to the parol evidence to determine that the agreement was ambiguous.

8

Furthermore, the merger clause of the agreement provides that terms may not be added to the agreement: "This Agreement and the documents and Exhibits attached hereto represent the full and complete ·terms between the parties and no prior, subsequent, or other terms shall be deemed to control, except any written subsequent modification to this Agreement which references this agreement and is signed and notarized by the Parties." By construing the breach clause as allowing the deduction of only periodic payments, the court added terms to the agreement contrary to this clause.

The court was motivated by the parol evidence from Thomas that they would not be made whole if the $30,500 were deducted from the amount in the agreement. But this was a settlement agreement. Parties frequently settle lawsuits for less than they are owed simply to reduce the expense and uncertainty of litigation. There is no showing that the agreement was so inequitable as to justify the court's interference with its express terms.

Because the agreement was unambiguous, the court erred in failing to reduce the consent judgment by the initial payment of $30,500. While we affirm the judgment to the extent that the court enforced the judgment, we reverse and remand for the trial court to correct the final judgment by reducing it by $30,500 and adjusting the interest calculation accordingly.

TAYLOR and DAMOORGIAN, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***