ROTHENBERG, J.
The former husband, Jorge Luis Riera (“Father”), appeals two post-dissolution orders — (1) an order enforcing the parties’ Marital Settlement Agreement (“MSA”), requiring the Father to reimburse the former wife, Ana Margarita Riera (“Mother”), for payments she made for their adult son’s college expenses, and requiring the Father to pay $800 per month for the son’s college expenses starting October 1, 2010 (“Enforcement Order”) (Case No. 3D10-2917); and (2) an order holding the Father in civil contempt for willfully disregarding the Enforcement Order (“Contempt Order”) (Case No. 3D10-3441). We reverse the orders under review, and remand for further proceedings.
In 1992, the Father and Mother, whose son was born in November 1991, entered into the MSA, which was incorporated into the final judgment of dissolution of marriage. The MSA states in pertinent part:
3. Child Support: The [Father] shall pay the [Mother] an amount as set out below to assist with the support of the parties’ minor child.
[[Image here]]
d. That the parties shall equally pay for the cost of the minor child’s college tuition, books, supplies and any and all other related expenses. The parties will purchase the Florida four (4) years Prepaid College Program the cost of the program shall be equally paid for by both parties.
In July 2010, the Mother filed a “Verified Motion for Contempt to Compel and to Enforce Marital Settlement Agreement and Motion to Order [Father] to Pay Monthly College Expense,” alleging that, pursuant to Paragraph 3.d. of the MSA, the Father is required to pay 50% of their son’s college expenses at George Washington University (“GW”), which for the 2010-2011 school year equals $850 monthly, after applying loans, grants, and the Florida Prepaid College Program to the expenses.[1]
At the hearing on the Mother’s verified motion, the Father, an attorney, represented himself. He explained that when the parties entered into the MSA, they intended that their son would attend a public university in Florida, and therefore, in the MSA, they voluntarily agreed to purchase the Florida Prepaid College Program. Although the parties’ son was accepted to Florida State University and awarded a 100% Bright Futures Scholarship, he chose to attend GW without consulting the Father. As to his financial ability to pay, the Father explained that, although he earns $135,000 per year and his current wife is employed as a school teacher, he cannot afford to make such a large monthly payment towards his son’s college expenses because his two daughters attend a private school, he pays $4500 monthly on his first mortgage, he has a second mortgage, and his home is under water.
Following the hearing, the trial court entered the Enforcement Order, finding that the MSA does not place any restrictions on which college the son can attend, and that the Father’s “interpretation that the Florida Pre-Paid College Fund reference means that the child would attend a Florida school is flawed.” (emphasis in original). The trial court, however, found that the Father’s failure to pay was not willful as he believed that he was not required to pay. The trial court ordered the Father to reimburse the Mother, and to start making monthly payments of $800 as of October 1, 2010. The trial court *1166 denied attorney’s fees, but stated that it would consider assessing fees against the Father if enforcement actions were necessary. The Father timely appealed the Enforcement Order.
In October 2010, the Mother filed a “Second Verified Motion for Contempt to Enforce Order Granting [Mother’s] Verified Motion for Contempt, to Compel and to Enforce Marital Settlement Agreement,” asserting that the Father failed to make any of the payments required in the Enforcement Order, although he has the ability to comply. The trial court conducted a hearing in December, and entered the Contempt Order, finding the Father in civil contempt for willfully and flagrantly violating the trial court’s Enforcement Order; sentencing the Father to sixty days in jail, but allowing him to purge himself of the contempt by paying $5600 to the Mother plus $1500 in attorney’s fees; and ordering the Father to surrender by January 25, 2011, unless he pays the purge amount. The Father timely appealed the Contempt Order, and this Court subsequently stayed both orders under appeal.
The Father contends that the trial court erred by finding that, pursuant to paragraph 3.d. of the MSA, he must pay his adult son’s tuition and expenses at a private, out-of-state university. As we conclude that the MSA contains a latent ambiguity, we reverse the Enforcement Order and remand for an evidentiary hearing to allow the trial court to determine the intent of the parties when they executed the MSA.
A marital settlement agreement is “subject to interpretation like any other contract.” Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996); see also Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980) (“Provisions of a property settlement agreement are interpreted by courts like any other contract.”). Therefore, this Court is on “equal footing” with the trial judge in interpreting the MSA. Ballantyne, 666 So.2d at 958; Geiger v. Geiger, 632 So.2d 693, 695 (Fla. 1st DCA 1994).
“A latent ambiguity arises when the language in a contract is clear and intelligible, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two or more possible meanings.” GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Sys., Inc., 51 So.3d 1243, 1245 (Fla. 5th DCA 2011) (citing Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1139 (Fla.1998)); see also Drisdom v. Guarantee Trust Life Ins. Co., 371 So.2d 690, 693 n. 2 (Fla. 3d DCA 1979) (“A latent ambiguity has been defined as an ambiguity where the language employed in the policy is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.”) (citing Ace Electric Supply Co. v. Terra Nova Electric, Inc., 288 So.2d 544, 547 (Fla. 1st DCA 1973)). When a contract contains a latent ambiguity, the trial court “must hear parol evidence to interpret the writing properly.” Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So.2d 657, 659 (Fla. 2d DCA 2005) (quoting RX Solutions, Inc. v. Express Pharmacy Servs., Inc., 746 So.2d 475, 476 (Fla. 2d DCA 1999)); see also Drisdom, 371 So.2d at 693 (holding that “extrinsic evidence such as parol evidence is permissible to explain” latent ambiguities).
Here, paragraph 3.d. of the MSA is “intelligible” but it is not so clear, and the extrinsic facts and evidence suggest differing interpretations. The first sentence of paragraph 3.d. provides “[t]hat the parties *1167 shall equally pay for the costs of the minor child’s tuition, books, supplies and any and all other related expenses.” (emphasis added). The MSA specifically lists tuition, books, and supplies, but does not list room and board as a covered expense. Because room and board are material, substantial expenses, you would expect them to be listed as covered expenses if they were to be included, especially, since books and supplies, which are not as substantial, are listed. It thus becomes paramount to determine whether “any and all other related expenses” refers to expenses related to tuition, books, and supplies, or whether it refers to all related expenses associated with attending college. For example, does it include travel expenses, insurance, spending money, etc.? Thus, the MSA is not clear, is subject to differing interpretations, and requires clarification of the parties’ intent.
Additionally, “[i]f a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations, then the occurrence of such condition or situation reveals an insufficiency in the contract not apparent from the face of the document.” Hunt v. First Nat’l Bank of Tampa, 381 So.2d 1194, 1197 (Fla. 2d DCA 1980). This insufficiency is also considered a latent ambiguity, and as already stated, permits the trial court to consider parol evidence to determine what the parties would have included in their contract had they anticipated the occurrence they overlooked. Id. (citing Morton v. Morton, 307 So.2d 835 (Fla. 3d DCA 1975)).
Paragraph 3.d. of the MSA clearly contains the type of insufficiency contemplated in Hunt and Morton. The MSA fails to address the duties of the parties under certain material conditions and circumstances. Specifically, it fails to address what the parties’ responsibilities are in given situations, such as here where their son opted to attend an expensive out-of-state private school rather than an in-state public university that offered him a substantial scholarship in addition to the funding provided by the Florida Prepaid College Program that his Mother and Father paid into pursuant to the MSA. It is understandable that, given the circumstances of this case, the parties did not contemplate the situation presented here. The parties were married for a very short period of time and their marriage was dissolved when their son was only ten months old. Both parents attended a Florida public university, and the Father testified it was anticipated that their son would do the same, which is why the MSA required them to fund the Florida Prepaid College Program.
The MSA also does not address how long the parties must pay for their son’s college expenses or provide for any modification based on an ability to pay or any disparity in the resources of the parties. None of these occurrences were anticipated or included in the MSA, thus creating an insufficiency, or latent ambiguity which can only be resolved in the introduction of parol evidence regarding the intent of the parties.
Although we have reversed the Enforcement Order, we nonetheless address the Contempt Order which was based on the Father’s failure to comply with the Enforcement Order. The trial court erred by holding the Father in civil contempt of court for failing to comply with the Enforcement Order, and additionally erred in ordering that the Father be incarcerated absent the payment of the purge amount specified by the trial court.
Any duty a parent has to pay an adult child’s college expenses is moral rather than legal. Grapin v. Grapin, 450 So.2d 853, 854 (Fla.1984). However, “[w]hen parties to a dissolution proceeding *1168 agree to educate their child after the child reaches [the] age of majority, the agreement is valid and may be enforced by either party to the agreement.” Winset v. Fine, 565 So.2d 794, 795 (Fla. 3d DCA 1990); see also Madson v. Madson, 636 So.2d 759, 761 (Fla. 2d DCA 1994) (“Even though most financially able parents willingly assist their adult children in obtaining a higher education, any duty to do so is a moral rather than a legal one, absent either a finding of legal dependence or a binding contractual agreement by the parent to pay such support.”). Where a party is obligated to pay his adult child’s college expenses pursuant to a marital settlement agreement, the obligation “is not child support, but rather a contractual obligation arising from the marital settlement agreement.” Sutton v. Sutton, 701 So.2d 370, 372 (Fla. 2d DCA 1997) (emphasis added). Thus, contempt is not available to enforce the parties’ contractual obligation to pay their adult son’s college expenses. Nicoletti v. Nicoletti, 901 So.2d 290, 292 (Fla. 2d DCA 2005) (“A contractual duty to pay for a child’s college expenses cannot be enforced by contempt.”); Carlton v. Carlton, 816 So.2d 254, 256 (Fla. 2d DCA 2002) (“[C]ontempt is not an available remedy to enforce a marital settlement agreement’s obligation for one parent to pay college expenses.”); Southard v. Southard, 756 So.2d 251, 253 (Fla. 5th DCA 2000) (holding that contempt is not proper vehicle to enforce father’s contractual obligation to pay adult child’s college expense; rather the proper remedy is a “judgment enforceable by ordinary civil proceedings”); cf. Zolonz v. Zolonz, 659 So.2d 451, 453 (Fla. 4th DCA 1995) (holding that “the court’s contempt powers are available to enforce the father’s obligation to pay contractual support after the majority of the child” because “the father expressly agreed to the contempt remedy in the property settlement agreement”).
Here, the MSA required that the parties equally pay their son’s “college tuition, books, supplies and any and all other related expenses.” Prior to enrolling at GW, the son had reached the age of majority, and therefore, the Father’s obligation was a contractual obligation that cannot be enforced by contempt. Nicoletti, 901 So.2d at 292; Carlton, 816 So.2d at 256; Southard, 756 So.2d at 253. Therefore, even if we had affirmed the Enforcement Order, we would have reversed the Contempt Order.
Additionally, the trial court erred in ordering that the Father be incarcerated unless he paid the purge amount specified in the Contempt Order without making any findings as to the Father’s ability to comply with this provision in the Contempt Order. See Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985) (“[I]ncarceration for civil contempt cannot be imposed absent a finding by the trial court that the contemnor has the present ability to purge himself of contempt. Without the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door.”).
Reversed and remanded for further proceedings.
SCHWARTZ, Senior Judge, concurs.

. At the hearing, the Mother’s counsel acknowledged that the Father’s 50% share of the son’s college expenses equaled $800 per month, not $850.