Klingensmith, J.
Nationstar Mortgage Company d/b/a Champion Mortgage Company filed a reverse mortgage foreclosure action against Mary E. Levine following the death of her husband. Nationstar claimed that Mrs. Levine’s deceased husband was the only borrower under the, reverse mortgage agreement executed with Nationstar, and that upon his death, she was required to move out of the property that was the subject of the reverse mortgage unless she paid off the entire outstanding principal balance of the loan. The circuit court, though, granted Mrs. Levine’s summary judgment motion, ruling that she too was a borrower under the reverse mortgage along with her husband; Nationstar appealed. Based on the facts presented and the weight of the applicable case law, we reverse the trial court’s summary judgment decision.
In February 2009, Mr. Levine executed an adjustable-rate note home equity conversion in favor of Sterling Mortgage Services, Inc. In the note, Mr. Levine promised to repay the “Lender” (defined as Sterling “and its successors and assigns”) for any money borrowed up to $195,000, plus interest. Paragraph 7 of the note provided the conditions under which the Lender could declare the debt immediately payable in full. One of these conditions was if “[a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower.” The note defined the “Borrower” as “each person signing at the end of this Note.” Here, only Mr. Levine executed the note.
At the same time, both Mr. and Mrs. Levine signed an adjustable-rate home equity conversion mortgage (also known as a reverse.mortgage) granting a security interest in their home. At the beginning of the reverse mortgage, the document stated that “[t]he mortgagor is Julian C. Levine, joined by his wife, Mary E. Levine whose address is: 2944 Eagles Nest Way Port St. Lucie, FL 34952 (“Borrower”).” (Emphases added). The bottom of the reverse mortgage contained two signature lines in the section for borrower signatures. Above these signature lines read, “BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.” Directly above these two lines was the word “Borrowers” (in the plural), yet under the line for Mrs. Levine’s signature was the preprinted text “Mary E. Levine, Non-Borrowing Spouse.” (Emphases added).
*714 After six years of receiving payments under the terms of the note and reverse mortgage, Mr. Levine passed away in April 2015. Consequently, Nationstar notified Mrs. Levine that it would exercise its option to accelerate the debt pursuant to paragraph 9(a)(i) of the reverse mortgage, which provided, in pertinent part:
9. Grounds for Acceleration of Debt.
(a) Due and Payable. Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:
(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; ....
In its complaint, Nationstar alleged that it could foreclose pursuant to paragraph 9(a)(i) because the subject property was no' longer the residence of at least one surviving borrower, as Mrs. Levine was not a borrower according to the preprinted “non-borrowing spouse” text below her signature line. Mrs. Levine countered that paragraph 9(a)(i) did not allow Nationstar to foreclose since she was in fact a borrower under the reverse mortgage, as evidenced by: 1) the definition of “Borrower” in the first paragraph of the reverse mortgage, which explicitly included her by name; 2) the provision above the signature lines stating that “BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants” contained in the reverse mortgage; and 3) the term “Borrowers” placed directly above the signature lines.
Mrs. Levine moved for summary judgment. At the hearing on that motion, Na-tionstar asserted that summary judgment was inappropriate because the inconsistencies within the reverse mortgage rendered Mrs. Levine’s status as a “borrower” ambiguous, thereby necessitating the consideration of extrinsic evidence to glean the parties’ intent. The court disagreed with Nationstar and granted summary judgment for Mrs. Levine, finding that Na-tionstar was precluded from foreclosing because the reverse mortgage unambiguously defined Mrs. Levine as a borrower.
“A trial court’s interpretation of a contract is reviewed de novo. The same standard applies to the review of the entry of summary judgment.” 19650 NE 18th Ave. LLC v. Presidential Estates Homeowners Ass’n, 103 So.3d 191, 194 (Fla. 3d DCA 2012) (citation omitted).
“Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Sunshine State Ins. v. Jones, 77 So.3d 254, 257 (Fla. 4th DCA 2012) (quoting Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000)). “If the record reflects even the possibility of a material issue of fact, or if different inferences can reasonably be drawn from the facts, the doubt must be resolved against the moving party.” McCabe v. Fla. Power & Light Co., 68 So.3d 995, 997 (Fla. 4th DCA 2011) (quoting Fla. Atl. Univ. Bd. of Trs. v. Lindsey, 50 So.3d 1205, 1206 (Fla. 4th DCA 2010)).
In cases where a contract is ambiguous, summary judgment is usually improper. Berkowitz v. Delaire Country Club, Inc., 126 So.3d 1215, 1219 (Fla. 4th DCA 2012). Although as a general rule, “[t]he construction of a written contract is a matter of law to be determined by the court,” City of Orlando v. H.L. Coble Constr. Co., 282 So.2d 25, 26 (Fla. 4th DCA 1973), if the wording is ambiguous and the parties present different reasonable interpretations then “the issue of proper interpretation can become one of fact, thus precluding summary judgment.” Bunnell Med. Clinic, P.A. v. Barrera, 419 So.2d 681, 683 (Fla. 5th DCA 1982).
*715 An agreement is ambiguous if as a whole or by its terms and conditions it can reasonably be interpreted in more than one way. See Fla. Power & Light Co. v. Hayes, 122 So.3d 408, 411 (Fla. 4th DCA 2013) (quoting Miller v. Kase, 789 So.2d 1095, 1097-98 (Fla. 4th DCA 2001)). Contractual ambiguities are either “patent” or “latent.” Prime Homes, Inc. v. Pine Lake, LLC, 84 So.3d 1147, 1151 (Fla. 4th DCA 2012).
“Patent ambiguities are on the face of the document, while latent ambiguities do not become clear until extrinsic evidence is introduced and requires parties to interpret the language in two or more possible ways.” Id. at 1151-52. A patent ambiguity is intrinsically apparent on the face of the document due to “the use of defective, obscure, or insensible language.” Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002 (Fla. 2d DCA 1995). A latent ambiguity, on the other hand, “arises when the language in a contract is clear and intelligible, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two or more possible meanings.” Riera v. Riera, 86 So.3d 1163, 1166 (Fla. 3d DCA 2012) (quoting GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Sys., Inc., 51 So.3d 1243, 1245 (Fla. 5th DCA 2011)); see also Taylor v. Taylor, 183 So.3d 1121, 1122 (Fla. 5th DCA 2015) (“A latent ambiguity exists where the language of an agreement is facially clear but an extrinsic fact or extraneous circumstance creates a need for interpretation or reveals an insufficiency in the contract or a failure to specify the rights or duties of the parties in certain situations.”); Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So.2d 657, 659 (Fla. 2d DCA 2005) (explaining that a latent ambiguity can only be “brought to light when extraneous circumstances reveal ‘an insufficiency in the contract not apparent from the face of the document’ ” (quoting Hunt v. First Nat’l Bank, 381 So.2d 1194, 1197 (Fla. 2d DCA 1980))).
A significant difference between patent and latent ambiguities is that extrinsic evidence is normally not admissible to construe the former because its admittance “would allow a trial court to rewrite a contract with respect to a matter the parties clearly contemplated when they drew their agreement,” Emergency Assocs. of Tampa, 664 So.2d at 1002, whereas “ ‘[e]xtrinsie evidence ... is admissible to explain a latent ambiguity’ ... because doing so ‘is but to remove the ambiguity by the same kind of evidence as that by which it is created.’ ” Mac-Gray Servs., Inc., 915 So.2d at 659 n.2 (quoting Bradley v. Washington, Alexandria, & Georgetown Steam Packet Co., 38 U.S. 89, 13 Pet. 89, 97, 10 L.Ed. 72 (1839)).[1]
Yet despite the general prohibition against using extrinsic evidence to clarify patent ambiguities, an exception to the rule applies where the patent ambiguity at issue concerns “identity, capacity, or the parties’ relationship with one another”:
Typieally, the parol evidence rule provides that evidence outside the contract language “may be considered only when the contract language contains a latent ambiguity.” Duval Motors Co. [v. Rogers, 73 So.3d 261, 265 (Fla 1st DCA 2011)] (citing Wheeler v. Wheeler, Erwin & Fountain, P.A., 964 So.2d 745, 749 (Fla. 1st DCA 2007)).... Usually, a court may not resolve a patent ambiguity—an ambiguity appearing on the face *716 of the document—by consideration of parol evidence. Mac-Gray Servs., Inc., 915 So.2d at 659 (citing Crown Mgmt. Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984); Landis v. Meats, 329 So.2d 323, 325-26 (Fla. 2d DCA 1976)).
However, courts allow parol evidence regarding identity, capacity, and the parties’ relationship with one another even when the ambiguity exists on the face of the document because the court would not be rewriting the terms of the contract. Landis, 329 So.2d at 326 (stating that when “the ambiguity is patent, to admit evidence would be improper since it would, in effect, allow the court to rewrite the contract for the parties by supplying information the parties themselves did not choose to include,” but “that distinction is not relevant here since the court was only interested in determining the capacity of the parties who entered the agreement rather than in varying or supplying any terms to the agreement”).
Fi-Evergreen Woods, LLC v. Robinson, 135 So.3d 331, 336 (Fla. 5th DCA 2013) (emphasis added).[2]
In finding that the reverse mortgage agreement unambiguously defined Mrs. Levine as a “borrower” under its terms, the trial court concluded there were no genuine issues of material fact as to the document’s supposed lack of ambiguity. We disagree. Although there was nothing ambiguous about the entailments of being a “borrower” as used in the agreement, parts of the reverse mortgage seemed to define Mrs. Levine as a “borrower,” while the undefined term “non-borrowing spouse” printed below her signature line reasonably suggested otherwise. This internal contradiction constituted a patent ambiguity because it appeared on the face of the agreement; no extrinsic facts or evidence were needed to reveal the ambiguity.
Nevertheless, it was improper to use summary judgment to resolve this kind of patent ambiguity. As the Second District noted in Mac-Gray Services regarding latent ambiguities, “[w]here there is a latent ambiguity affecting a disputed contract provision, there necessarily will be a disputed issue of material fact. Accordingly, ‘[w]hen an agreement contains a latent ambiguity ... the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment.’ ” 915 So.2d at 659-60 (omission and second alteration in original) (quoting Griffin v. Fed. Deposit Ins., 532 So.2d 1358, 1360 (Fla. 2d DCA 1988)). This same reasoning applies to preclude summary judgment here because extrinsic evidence was needed to answer the factual question whether Mrs. Levine was a borrower under the reverse mortgage given her signing as a “non-borrowing spouse” in the face of conflicting provisions elsewhere. See Fi-Evergreen Woods, 135 So.3d at 336 (“[C]ourts allow parol evidence regarding ... the parties’ relationship with one another even when the ambiguity exists on the face of the document because the court would not be rewriting the terms of the contract.”). As the question of Mi’s. Levine’s relationship to Nationstar arising *717 from the agreement’s internally incongruous language was a type of patent ambiguity resolvable by extrinsic evidence, the trial court should have denied summary judgment and held a full evidentiary hearing on the matter.
The construction of the present contract is at issue only because the agreement contained conflicting indications as to Mrs. Levine’s status as a borrower. It follows, then, that the contract may be properly construed only after a consideration of the circumstances under which it was made and the meaning ascribed by the parties to its ambiguous language. The parties must therefore be afforded the opportunity to offer proof, not merely by affidavit or argument, but on a trial of the action.

Reversed and Remanded.

Levine and Kuntz, JJ,, concur.

. "The phrase parol, or extrinsic evidence stands contrasted with that intrinsic evidence which is found in the writing itself.” B.F. Goodrich Co. v. Brooks, 113 So.2d 593, 596 (Fla. 2d DCA 1959) (quoting Edmund M. Morgan, Basic Problems of Evidence, 2 A.L.I. 341, 341 (1954)).

. This court has previously expressed skepticism about assigning too much significance to the difference between patent and latent ambiguities:
Although there appears to be some divergence of opinion as to when parol evidence is properly admitted because of the latent ambiguity—patent ambiguity dichotomy, the distinction between the type of ambiguity involved is one of form over substance. The growing and better reasoned trend of authority indicates that the introduction of parol evidence to probe the true intent of the parties is proper, irrespective of any technical classification of the type of ambiguity present.
Royal Cont’l Hotels, Inc. v. Broward Vending, Inc., 404 So.2d 782, 784 (Fla. 4th DCA 1981).