DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEFFREY MORRIS**,
Appellant,

v.

**MGZ PROPERTIES, LLC, YORAM GALEL, HENRY GALEL,**
and **DAVIS ZIMET**,
Appellees.

No. 4D17-3587

[July 18, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey Dana Gillen, Judge; L.T. Case No. 50-2014-CA-03775XXXXMB (AE).

Carol A. Gart of Carol A. Gart P.A., Boca Raton, for appellant.

Ronald M. Gaché and Scott A. Simon of Shapiro, Fishman & Gaché, LLP, Boca Raton, for appellees.

KUNTZ, J.

Does the word "sale" mean any sale? The appellees insist it does not, at least not when the parties did not contemplate a specific form of a sale when they signed the contract. However, because this contract is clear and unambiguous, and not susceptible to multiple meanings, we conclude it must be applied as written and reverse the circuit court's judgment.

The contract at issue stated that payment would be due if any of three triggering events occurred, the first event being the "sale of the property" located at a specific street address. The appellant argued that this payment obligation was triggered when the property was sold at a foreclosure sale. The circuit court disagreed and concluded that the word "sale" as used in the contract contained a latent ambiguity, requiring the court to consider parol evidence to determine whether the parties intended that an involuntary sale, such as a foreclosure sale, would trigger the payment obligation.

The appellees argue that "[t]his is a classic case of latent ambiguity in a contract." In support, they rely extensively on cases such as *Taylor v. Taylor*, 183 So. 3d 1121, 1122 (Fla. 5th DCA 2015), *Florida Power & Light Co. v. Hayes*, 122 So. 3d 408, 411 (Fla. 4th DCA 2013), and *Riera v. Riera*, 86 So. 3d 1163, 1166 (Fla. 3d DCA 2012). Indeed, these cases do state that a latent ambiguity can arise from clear and intelligible language when "some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two or more possible meanings." *Riera*, 86 So. 3d at 1166. But that is not what we have here.

In *Riera*, the contract stated that "the parties shall equally pay for the costs of the minor child's tuition, books, supplies and any and all other related expenses," and the parties disputed whether room and board fit within the phrase "related expenses." *Id.* at 1166-67. The Third District concluded that the language was intelligible on its face but room and board are material expenses one would expect to be included if the parties intended to split those costs equally. *Id.* Thus, the court held, it "becomes paramount to determine whether 'any and all other related expenses' refers to expenses related to tuition, books, and supplies, or whether it refers to all related expenses associated with attending college." *Id.* The court then concluded that a latent ambiguity exists when "a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations." *Id.*

Similarly, in *Taylor* the parties prepared a contract providing that a Qualified Domestic Relations Order ("QDRO") would serve as the method for enforcing distribution of the husband's pension plan. 183 So. 3d at 1122. The City of Orlando Police Department rejected the QDRO and the Fifth District concluded that rejection qualified "as an extrinsic fact or extraneous circumstance which altered the parties' understanding of the means of payment and their respective duties." *Id.* at 1123.

Finally, in *Hayes*, this Court held that the contractual language "lying within the lake" could be applied in two equally plausible ways. 122 So. 3d at 411. We concluded that the "contract language here is 'susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract . . .'" and reversed the court's summary judgment order. *Id.* (quoting *Miller v. Kase*, 789 So. 2d 1095, 1097–98 (Fla. 4th DCA 2001)).

The facts in the cases upon which the appellees rely are not comparable to those here. Here, there is no extrinsic fact or extraneous circumstance that changed the parties' understanding of the contract. Nor is the contractual language susceptible to two interpretations. Thus, we "look to

2

the dictionary for the plain and ordinary meaning" of the word "sale." *See Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3d DCA 1999).

Black's Law Dictionary defines "sale" as "[t]he transfer of property or title for a price." *Sale, Black's Law Dictionary* (10th ed. 2014). For "foreclosure sale," Black's Law Dictionary states "see sale," and then defines the term within the definition of "sale" as "[t]he sale of mortgaged property, authorized by a court decree or a power-of-sale clause, to satisfy a debt." *Foreclosure Sale, Black's Law Dictionary* (10th ed. 2014). Similarly, we have held that "[i]t would therefore seem that both the common and legal meanings of the word, 'sale,' indicate a transfer of title. . ." *Martyn v. First Fed. Sav. & Loan Ass'n of W. Palm Beach*, 257 So. 2d 576, 579 (Fla. 4th DCA 1971). This includes any transfer of title; foreclosure sales included.

To accept the appellees' position would require us to rewrite the contract to state "sale of the property, unless it is a foreclosure sale" or "voluntary sale of the property." If that is what the appellees intended, they should have written the contract accordingly before signing it.

When the terms of a contract are clear and unambiguous, we are required to apply the plain and ordinary meaning of the words and apply them as they are written. The "sale of the property" provision was triggered when the property was sold. On remand, judgment must be entered in favor of the appellant.

*Reversed and remanded.*

DAMOORGIAN and LEVINE, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

3