DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**NORTH FLORIDA MANGO, LP,**
Appellant,

v.

**LLS HOLDINGS, LLC,**
Appellee.

No. 4D2022-2034

[November 8, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 502021CA009385.

Keith T. Grumer of Grumer Law, P.A., Weston, for appellant.

Maury L. Udell of Beighley, Myrick, Udell & Lynne, P.A., Miami, for appellee.

MAY, J.

A dispute over a land-sale transaction involving four corporate entities and their respective principals lays the foundation for this appeal. The buyer argues the trial court erred in granting summary judgment for the seller and failing, on rehearing, to address its second claim for declaratory relief. We agree and reverse.

**A. The Facts**

The buyer entered a contract with the seller to purchase a warehouse building, which housed an ice-skating rink on half of the property.[1] The ice-skating rink was rented and operated by another entity through a lease.

---

[1] The original buyer that signed the contract was the assignor of the ultimate buyer and appellant in this case. The term buyer has been used for both for ease in reading.

The lease's details were not disclosed to the buyer during contract negotiations. Rather, the seller's broker assured the buyer the ice-skating rink would *not* remain in operation after closing. He specifically relayed, "[m]y owner does not want to continue running the rink . . . . The current owner does not want to lease it back. The whole reason for selling is to alleviate the burden of running a rink."

In response, the buyer indicated he also didn't want to run the ice-skating rink but, because two years still remained on the lease, he would "entertain" a lease to another entity. The contract did not, however, disclose the lease nor reserve any rights of possession or occupancy.

The contract provided for the conveyance of "ALL FIXTURES & EQUIPMENT FOR THE OPERATION OF THE BUILDING UNITS, AND BUSINESS AS CURRENTLY RUN." The contract also called for the seller to convey the property by statutory warranty deed, "free of liens, easements, and encumbrances of record *or known to Seller.*" (Emphasis added). The contract set forth the closing procedures for the transaction and addressed the delivery of possession as one of the covenants.

The Closing Procedure paragraph provided:

> **(a) Possession and Occupancy**: **Seller** will deliver ***possession and occupancy*** of the Property to Buyer at Closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks, mailboxes, and security systems.

(Emphasis added).

Twice, the parties executed addenda to the contract extending the closing date. The first addendum extended the closing to May 7, 2021. The second addendum extended the closing to July 30, 2021, and required the buyer to pay a deposit of $500,000, to be either credited on the day of closing or constitute non-refundable "money earned." The second addendum stated if closing did not happen on the agreed date, the contract would terminate automatically.

During the due diligence period, the seller provided the buyer with a copy of the existing lease.

In anticipation of closing, the buyer obtained a title insurance policy from Chicago Title. Under that policy, Chicago Title would not insure the property if a tenant had a preexisting lease. The policy stated, "rights of

2

tenants occupying all or part of the insured land under unrecorded leases or rental agreements" are considered exceptions to title. Because of the title insurance commitment in the contract, the seller was aware of the buyer's policy with Chicago Title and its title exception.

On July 22, 2021, the parties exchanged closing documents. The seller provided a mechanic's lien affidavit, confirming it had "full, complete and undisputed possession of the [p]roperty and that **there are no leases**, options, interest or demands held thereon." (Emphasis added).

On July 26, 2021, the seller's attorney asked the buyer's attorney if she had a tenant estoppel letter form. This confused the buyer, who did not anticipate taking the property subject to a lease. On July 27, 2021, three days before closing, the seller filed an amended mechanic's lien affidavit, addressing the lease for the first time.

The seller's attorney then wrote to the buyer's attorney: "Per the terms of the contract, the lease will remain in place after closing and will not terminate at closing. Per the terms of the lease, the owner of the property may not change the locks. If it does so, it will be in breach of the lease."

The lease's continued existence, the seller's failure to turn over possession, and the tenant's continued operation of the ice-skating rink were not envisioned in the contract and triggered the exception in Chicago Title's Title Insurance Commitment. The buyer considered this a breach of the contract and immediately proposed a written transition agreement, which the seller rejected.

The buyer's principal did not attend the closing on July 30, 2021, but sent documents and funds to be held in escrow. On July 30, the buyer alleged it was ready, willing, and able to close. To wit, funds were wired to Chicago Title and all documents for the transaction were signed and delivered.

The seller refused to terminate the lease, surrender possession, and turn over the keys, notwithstanding its contractual obligation to do so at closing. This created a standoff, and the closing did not occur.

The buyer sued the seller for specific performance and declaratory relief. The buyer asked the trial court to find the seller's actions tantamount to breach—specifically, the seller's failure to deliver possession, occupancy, and marketable title. The buyer also sought to compel the sale and force the seller to deliver possession, occupancy, and marketable title.

3

The seller moved to dismiss, which the trial court denied. The seller then filed an answer and affirmative defenses, alleging failure to state a claim, anticipatory breach, unclean hands, inability to comply, termination by operation of law, and failure to join an indispensable party.

The buyer was the first to move for summary judgment. The buyer alleged it was entitled to specific performance because "but for" the seller's breaches, the buyer was "ready willing and able to close." The buyer asked the trial court to declare the seller in breach for its failure to deliver possession, occupancy, and marketable title.

Although the seller conceded the contract and its addenda governed, the seller disputed the buyer's interpretation of the contract's terms and the nature of the parties' rights. The seller specifically argued: (1) the lease was disclosed; (2) the lease did not make title unmarketable; (3) the seller did not breach; and (4) the contract terminated automatically when the closing did not occur. The seller also argued the buyer failed to refute its affirmative defenses.

The seller then cross-moved for summary judgment. The seller argued: (1) specific performance was not an adequate remedy; (2) the buyer was on notice of the lease and was not entitled to specific performance to terminate it; (3) the buyer accepted the seller's "business as currently run"; (4) the lease was not an encumbrance; (5) the buyer waived any title defects; and (6) the buyer accepted the property as is.

The buyer opposed the seller's motion, arguing: (1) disclosure of the lease was irrelevant; (2) the buyer performed its obligation on the closing day by delivering funds and documents to the closing agent; and (3) retaining possession was a title exception and breach of the contract. The buyer also argued summary judgment was inappropriate for the seller and precluded by issues of fact—notably, the parties' disagreement on the meaning of certain contract terms.

During the hearing, the trial court indicated the parties did not have a meeting of the minds on the agreement's essential terms, yet the trial court entered final judgment in the seller's favor. The trial court's order stated specific performance should not be ordered, inter alia, because doing so would include eliminating a valid leasehold. The trial court found the buyer never closed on the property, allowing the contract to terminate by its terms. The trial court also found the lease was not an encumbrance on title. And even assuming the lease was an encumbrance under Florida law, the trial court found the buyer failed to object when it learned about

the lease "two months" before closing. The trial court expressly told the buyer it "should have" proceeded with closing and sued for damages.

The buyer filed a motion for rehearing, claiming the trial court failed to rule on the buyer's request for declaratory relief regarding the contract's terms. The trial court denied the motion. From the summary judgment and order denying its motion for rehearing, the buyer appeals.

## B. The Analysis

### 1. *The Parties' Arguments*

On appeal, the buyer argues the trial court erred in: (1) denying its motion for summary judgment; (2) failing to rule on its declaratory relief claim; and (3) denying its motion for rehearing. The seller responds the trial court correctly granted summary judgment because the contract terminated by its terms when the buyer failed to close. We agree with the buyer for several reasons.

First, as the buyer argued at the summary judgment hearing, genuine issues of material fact precluded the entry of summary judgment for the seller. Second, the trial court failed to declare the terms of the contract as requested by the buyer. And third, the trial court inconsistently enforced the terms of an agreement that it found to have lacked a meeting of the minds.

We review de novo an order granting summary judgment. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). "A trial court's interpretation of a contract is [also] reviewed de novo." *Inlet Colony, LLC v. Martindale*, 340 So. 3d 492, 494 (Fla. 4th DCA 2022) (citation omitted). However, "[t]he decision whether to grant or withhold a judgment for specific performance is a matter within the sound discretion of the trial court[,] which will not be disturbed on appeal unless clearly erroneous." *Muñiz v. Crystal Lake Project, LLC*, 947 So. 2d 464, 469 (Fla. 3d DCA 2006). A mixed standard thus applies.

Here, while both parties moved for summary judgment—each representing there were no material facts in dispute—they continue to disagree on the contract's essential terms. The buyer asks us to reverse summary final judgment for the seller with instructions to: (1) enter summary judgment in its favor; and (2) compel the seller to deliver "occupancy," "possession," and the "business as currently run." The seller asks us to affirm.

5

2. *The Law*

"[W]here a contract's terms are clear and unambiguous, the court looks no further than the plain meaning of the language used in the contract as the best expression of the parties' intent." *Grove Harbour Marina v. Grove Bay Inv. Grp., LLC*, 48 Fla. L. Weekly D1095 (Fla. 3d DCA May 31, 2023). But "[i]n cases where a contract is ambiguous, summary judgment is usually improper." *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 714 (Fla. 4th DCA 2017).[2]

Here, the buyer sued for specific performance and declaratory relief; it did not seek damages for breach of contract. To prevail at summary judgment, the buyer had the burden of demonstrating two things: (1) the absence of material facts in dispute; and (2) its entitlement to judgment as a matter of law. So, to prove entitlement to specific performance, the buyer had the burden of demonstrating it was "ready, willing, and able to perform" under the contract. *See Hollywood Mall, Inc. v. Capozzi*, 545 So. 2d 918, 919–20 (Fla. 4th DCA 1989).

### a. The Contract's Terms

The parties interpreted three essential contract terms differently. First, both parties had a fundamentally different understanding of the term "businesses as currently run." The term "businesses as currently run" is not defined in the contract and the trial court ruled it was "irrelevant" in entering judgment for the seller. Nothing could have been further from the truth.

Each party submitted conflicting evidence to support its respective interpretation of the term "businesses as currently run." The trial court weighed the conflicting evidence and assessed its credibility to reach its decision to accept the seller's interpretation. In doing so, the trial court erred.

Second, the parties understood the terms "occupancy and possession" differently. The buyer believed it would have the immediate right to "occupancy and possession," as it was purchasing the "businesses as

---

[2] "[I]f the wording is ambiguous [or] the parties present different reasonable interpretations then 'the issue of proper interpretation can become one of fact, thus precluding summary judgment.'" *Nationstar Mortg. Co.*, 216 So. 3d at 714 (quoting *Bunnell Med. Clinic, P.A. v. Barrera*, 419 So. 2d 681, 683 (Fla. 5th DCA 1982)).

6

currently run." The seller believed it could, somehow, deliver possession and occupancy while the lease remained in place. But a plain reading of the terms "occupancy and possession" provides clear support for the buyer's interpretation of these terms.

The contract stated:

> **(a) Possession and Occupancy**: **Seller** will deliver *possession and occupancy* of the Property to Buyer at Closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks, mailboxes, and security systems.

(Emphasis added). The seller's interpretation of "occupancy and possession" changed at several material times before the entry of summary judgment.

During contract negotiations, the seller's broker represented, "[the seller] does not want to continue running the rink . . . . The [seller] does not want to lease it back. The whole reason for selling is to alleviate the burden of running a rink." In conformity with these representations, the seller then contractually agreed to deliver "possession and occupancy of the Property to Buyer at Closing."

However, within days before closing, the seller's interpretation of "occupancy and possession" changed.[3] Then, and only then, the seller represented to the buyer, "[p]er the terms of the contract, the lease will remain in place after closing and will not terminate at closing." The seller also filed an amended mechanic's lien to that effect.

But the seller's second position contradicted: (1) its first position, relayed to the buyer through the representations of its broker; (2) its first mechanic's lien, filed just one week prior, representing the seller "has full, complete and undisputed possession of the [p]roperty and that there are no leases, options, interest or demands held thereon"; and (3) the buyer's fundamental understanding at all material times.

The parties submitted conflicting summary judgment evidence in support of their positions. The trial court assessed the credibility of that evidence, and implicitly accepted the seller's interpretation by finding the seller did *not* fail to deliver "occupancy and possession." This finding was

---

[3] The seller apparently became concerned the buyer would close the skating rink, which had obligations to third parties for use throughout the year.

7

a factual determination, not ripe for summary judgment, and thus legal error.

### b. The Lease

Prior to summary judgment, the parties disputed the disclosure of the lease. The buyer and the seller disagreed on when, where, and to whom, the lease was disclosed.

The buyer alleged the lease was not disclosed during negotiations, in the contract itself, in its subsequent addenda, or in its due diligence packet. While the buyer admitted it became aware of *a* lease from the due diligence documents, that lease did not negate or contradict the seller's verbal representation that the rink would cease to operate post-closing.

The buyer points to the seller's first mechanic's lien, filed just one week before closing, to drive this point home. There, the seller represented it had "full, complete and undisputed possession of the [p]roperty and that there are no leases, options, interest or demands held thereon." One week later, the seller filed an amended mechanic's lien to the opposite effect. The seller wrote: "Per the terms of the contract, the lease will remain in place after closing and will not terminate at closing."

The seller paints a different story. The seller argued the buyer was "well aware" of the lease—and "irrefutably after" the buyer received its due diligence packet.

The trial court found the buyer knew about the lease two months before the scheduled closing. The trial court reasoned that even *without* actual knowledge, the buyer should have known of the lease because due diligence would have revealed people ice skating there. This decision, however, necessarily involved the weighing of evidence and assessing of credibility.

These issues should have been subject to a bench trial, where each party could challenge the evidence and cross-examine witnesses. Summary judgment deprived both parties of this opportunity, notwithstanding they both sought a summary judgment.

### c. The Buyer's Motion for Summary Judgment

The buyer next argues the trial court misinterpreted the contract, misapplied the law, and erred in denying it summary judgment on its specific performance claim. We disagree.

Specific performance is an equitable remedy, not a matter of right, that can "only be granted when 1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *All Seasons Condo. Ass'n, Inc. v. Patrician Hotel, LLC*, 274 So. 3d 438, 445–46 (Fla. 3d DCA 2019) (citation omitted). "Specific performance, however, is a remedy for breach, not a stand-alone cause of action." *Hendershott v. Ostuw*, No. 20-CV-80006, 2020 WL 6305105, at *3 (S.D. Fla. Oct. 14, 2020).

Although the trial court erred in its reasoning, it still properly denied the buyer's motion for summary judgment for the same reason it erred in granting the seller's motion: genuine issues of material fact precluded entry of judgment as a matter of law. For that reason, under the "tipsy coachman" doctrine, we affirm the denial of the buyer's motion for summary judgment. *See State Farm Fire & Cas. Co. v. Levine*, 837 So. 2d 363, 365 (Fla. 2002) ("[T]he 'tipsy coachman' doctrine . . . permits a reviewing court to affirm a decision from a lower tribunal that reaches the right result for the wrong reasons so long as 'there is any basis which would support the judgment in the record.'" (citation omitted)).

### d. The Buyer's Motion for Rehearing

Lastly, the buyer argues the trial court erred in denying its motion for rehearing for two reasons. First, the trial court overlooked binding authority stating a lease *is* an encumbrance that renders title unmarketable. Second, the trial court failed to fully rule on the buyer's request for declaratory relief. The seller responds the trial court properly adjudicated the issues pled, properly interpreted the contract, and thus did not err.

We review an order denying a motion for rehearing or reconsideration for an abuse of discretion. *Fla. Power & Light Co. v. Hayes*, 122 So. 3d 408, 411 (Fla. 4th DCA 2013).

A party may move for rehearing of final orders to give the trial court an opportunity to consider matters that it overlooked or failed to consider. Fla. R. Civ. P. 1.530(b); *Balmoral Condo. Ass'n v. Grimaldi*, 107 So. 3d 1149, 1151 (Fla. 3d DCA 2013) (quoting *Carollo v. Carollo*, 920 So. 2d 16, 19 (Fla. 3d DCA 2004)).

Here, the trial court abused its discretion in denying the buyer's motion for rehearing because the buyer brought several omissions and oversights to the trial court's attention, which the trial court again overlooked. First,

9

the trial court failed to fully rule on the buyer's declaratory relief count. Specifically, the trial court never interpreted the ambiguous contract terms: "business as currently run," "occupancy," and "possession."

Second, the trial court overlooked case law establishing the lease was an encumbrance rendering the title unmarketable. And third, the trial court's conclusion that notice of the lease was immaterial and irrelevant was error. In short, the trial court abused its discretion in denying the buyer's motion for rehearing.

3. *Conclusion*

For the foregoing reasons, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

WARNER and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**