*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0328p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

STEPHANIE LAMPE,

   *Plaintiff-Appellant*,

  *v.*

KIRK KASH,

   *Defendant-Appellee*.

No. 12-4487

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:03-cv-00162—S. Arthur Spiegel, District Judge.

Decided and Filed: November 8, 2013

Before: SUTTON and KETHLEDGE, Circuit Judges; DOW, District Judge.[*]

─────────────────

**COUNSEL**

**ON BRIEF:** Susan K. Cliffel, WOOD & LAMPING LLP, Cincinnati, Ohio, for Appellant.

─────────────────

**OPINION**

─────────────────

SUTTON, Circuit Judge. Due process entitled Stephanie Lampe to notice and an opportunity for a hearing before a bankruptcy court extinguished her $25,000 judgment. Does notice to a lawyer who represented her eight years earlier, but no longer represents her, satisfy this obligation?

─────────────────

[*] The Honorable Robert M. Dow, Jr., United States District Judge for the Northern District of Illinois, sitting by designation.

In 2004, Stephanie Lampe won a $25,000 judgment against Kirk Kash. Kash could not pay this debt or for that matter many of his other debts. He sought bankruptcy protection in 2012.

When he submitted a list of creditors' names and addresses to the court, as Bankruptcy Rule 1007(a) requires, Kash omitted Lampe's residential address. He instead listed her in care of Gerhardstein & Branch, the firm that represented her in the lawsuit eight years earlier. But that law firm stopped working for Lampe in 2004, and the notice dispatched to the firm's address never made it to Lampe. Lampe did not participate in the bankruptcy case, which discharged the judgment debt.

After the discharge, Lampe returned to the district court where she filed her original lawsuit, seeking to revive her judgment against Kash. Holding that the discharge covered the judgment debt, the district court rejected her claim, prompting this appeal.

At that point, the adversarial process broke down. Kash represents himself in this appeal, and he did not file an appellate brief. One might be tempted to think that Lampe should win by default at that point. But that is not the case. "If an *appellant* fails to file a brief within the time provided . . . , an appellee may move to dismiss the appeal." Fed. R. App. P. 31(c) (emphasis added). But "[a]n *appellee* who fails to file a brief" faces a lighter penalty: He "will not be heard at oral argument unless the court grants permission." *Id.* (emphasis added). All of this leads to differential treatment of appellants and appellees, to be sure. *See Allgeier v. United States*, 909 F.2d 869, 871 n.3 (6th Cir. 1990). But with good reason: A district court's judgments are not chattels that the victors may abandon at their pleasure but precedents with value "to the legal community as a whole." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). A reversal of a judgment premised on the conduct of one party (the appellee) would undermine this principle. No such problem arises when the appellant opts to leave the district court's judgment as he found it.

That takes us to the merits. A debt is the creditor's property, and the Due Process Clause entitles her to service of notice "reasonably calculated" to reach her before she

is deprived of that property. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The surest way to follow this rule is personal service. *Id.* at 313. Failing that, notice mailed to the owner generally will suffice. *Id.* at 318–19. And if the owner is represented by counsel in that dispute, notice to the attorney generally will suffice. *Cf. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990); *Smith v. Ayer*, 101 U.S. 320, 326 (1879); *Comm'r v. Stewart*, 186 F.2d 239, 242 (6th Cir. 1951). What of notice to counsel who stopped representing the party eight years earlier? That, it seems to us, is a road too long.

Instead of being "reasonably calculated" to reach the target, notification to a former attorney provides little assurance that the notice will make its way home. Lawyers have "no general continuing obligation" to pass information along to people they no longer represent. Restatement (Third) of the Law Governing Lawyers § 33A, cmt. h (2000). Sure, the canons admonish them to "use reasonable efforts to forward" communications meant for former clients. *Id.* But "efforts to forward," even "reasonable efforts to forward," fall short of what due process demands: a method of notice "reasonably *certain* to inform those affected." *Mullane*, 339 U.S. at 315 (emphasis added).

Another way to think about it is to ask how someone "desirous of actually informing" the creditor would go about reaching him. *Jones v. Flowers*, 547 U.S. 220, 229 (2006). Would he choose the roundabout of notifying a law firm that worked for the creditor eight years ago, hoping it would forward the message? Doubtful, particularly when a more direct option remains untried: looking up the creditor's address and sending the notice there.

Agency law supports this conclusion. When a lawyer represents a client, his acts become the client's acts, his knowledge the client's knowledge. But we would not say the same of a *former* lawyer. "Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative. His acts or omissions therefore cannot fairly be attributed to the client." *Maples v. Thomas*, 132 S. Ct. 912, 922–23 (2012) (citations and internal quotation marks omitted). Under agency

law, notice to the attorney counts as notice to the client, but notice to a former attorney does not.

The case law points in the same direction. So far as we can tell, every federal court confronting today's question—in the bankruptcy context or elsewhere—has answered it as we do. *See, e.g.*, *In re Najjar*, Bankruptcy No. 06-10895 (AJG), 2007 WL 1395399, *5 (Bankr. S.D.N.Y. May 11, 2007) ("[T]he Court finds that the [notice to the law firm] cannot be imputed to the plaintiff. . . . [The] representation of Plaintiff ended seven years ago."); *In re Gold*, 375 B.R. 316, 326 (Bankr. N.D. Tex. 2007) ("Service on former counsel is not sufficient to give . . . notice to an individual."); *In re Martini*, No. 03-41661 (DHS), 2006 WL 4452974, at *5 (Bankr. D.N.J. Apr. 3, 2006) ("[W]hile it may be convenient for counsel to serve judgment creditors via their former state court counsel, such service, without more, does not serve to protect a creditor's rights to due process . . . ."); *In re O'Shaughnessy*, 252 B.R. 722, 731 (Bankr. N.D. Ill. 2000) ("Notices to . . . former counsel . . . are not the functional equivalent of proper notice in this case."); *King v. United States*, 65 Fed. Cl. 385, 399–400 (2005) ("[N]otice to the address of an attorney who had represented [the client] more than one year in the past . . . was inadequate as a matter of law.").

A different conclusion would create problems of its own. If notice sent to an attorney who stopped representing the creditor eight years ago suffices, what of notice to an attorney who ended the representation sixteen years earlier? Both scenarios seem equally inconsistent with due process and, more to the point, equally at odds with the reasonably calculated standard it requires. Service on former attorneys not only creates distance-in-time problems, but it also creates lack-of-knowledge problems about how the representation ended. What if the creditor fired the attorney for incompetence? What if there was a pay dispute? What if the attorney abandoned the client without telling him? *Cf. Maples*, 132 S. Ct. at 922–23. There is no reason the debtor would know whether any of these things had occurred and thus no reason for assuming that such a notice would likely make its way to the creditor.

The Constitution, true enough, does not insist on notice by mail where the sender cannot reasonably ascertain the recipient's whereabouts. *See Mullane*, 339 U.S. at 317. But nothing in this record suggests that the search for Lampe's address would have imposed an unreasonable burden on Kash. To satisfy Bankruptcy Rule 1007, Kash had to identify the addresses of his other creditors anyway. Why would Lampe's address have been any harder to find?

The Constitution, it also is true, judges the adequacy of notice from the perspective of the sender, not the recipient. If a person in Kash's position would have reasonably believed that Gerhardstein & Branch still represented Lampe at the time of the bankruptcy, this case might come out the other way. *See* Restatement (Third) of Agency § 5.02(1) (2006) ("A notification given to an agent is effective . . . if the agent has . . . apparent authority to receive the notification."). But Lampe did not fire her lawyer in secret; the representation ended because the case ended. In the absence of further investigation, any belief that the firm still worked for Lampe in 2012 would be unreasonable. *See* Restatement (Third) of the Law Governing Lawyers § 31(2) ("[A] lawyer's actual authority to represent a client ends when . . . the lawyer has completed the contemplated services."); *id.* § 31(3) ("A lawyer's apparent authority to act for a client with respect to another person ends when the other person knows or should know of facts from which it can be reasonably inferred that the lawyer lacks actual authority . . . .").

Because Lampe never received the notice she was due, the bankruptcy court could not discharge the debts she was due. The discharge does not stand in the way of Lampe's motion to revive this judgment.

For these reasons, we reverse and remand for further proceedings.