**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**September 15, 2017**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION[*]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE TODD J. MCNALLY,

Debtor.

_____

MICHAEL CARNS,

         Plaintiff - Appellant,

v.

TODD J. MCNALLY,

         Defendant - Appellee.

BAP No. CO-17-001

Bankr. No. 14-20844
Adv. No. 15-01445
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado
_____

Before **MICHAEL**, **HALL**, and **THUMA**,[**] Bankruptcy Judges.
_____

**THUMA**, Bankruptcy Judge.
_____

After the Debtor, Todd J. McNally, received his Chapter 7 discharge in November

2014, Appellant Michael Carns got the bankruptcy case reopened and brought an

_____

[*]     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[**]     Honorable David Thuma, U.S. Bankruptcy Judge, United States Bankruptcy Court for the District of New Mexico, sitting by designation.

adversary proceeding seeking to revoke the Debtor's discharge and have the Debtor's obligation to him declared nondischargeable. The bankruptcy court tried the proceeding and ruled against Appellant on both claims. This appeal followed. Finding no error, we affirm the bankruptcy court.

## I.  FACTUAL AND PROCEDURAL HISTORY[1]

In 2006, Appellant responded to a newspaper ad placed by the Debtor seeking investors in the Southbridge shopping center in Sarasota, Florida. After speaking with the Debtor, Appellant decided to invest $700,000.00 in a company called VH Holdings, LLC, to finance the purchase of the center. Within a few months, the Debtor attempted to "flip" the center for a profit.[2] There were many potential buyers but no sale occurred because one of the Debtor's creditors had filed a notice of lis pendens against the Debtor, encumbering Southbridge. The Debtor could not "clear the lis pendens or raise additional funds to satisfy the property's secured debt, and [Southbridge] was lost to foreclosure."[3]

Appellant, understandably unhappy to have lost his entire investment to one of the Debtor's creditors, retained attorney James D. Gibson and sued the Debtor for fraud in

---

[1]  This factual background is substantially drawn from the bankruptcy court's findings. *Findings of Fact and Conclusions of Law*, *in* Appellant's App. at 119.

[2]  *Id.* at 1, *in* Appellant's App. at 119.

[3]  *Id.* at 1, *in* Appellant's App. at 119.

the Florida state court in 2007.[4] Appellant was awarded a $700,000 default judgment on February 6, 2008.[5]

Meanwhile, the Debtor divided his time between Florida and Colorado, operating numerous ventures.[6] With a new investor, Jeffrey Hernandez, he formed several new companies, including TheeLife.com, LLC; Vestor, LLC, aka Theelife; and Vestor Auto Lease, LLC ("VAL").[7] The companies had no assets but their checking accounts.[8] The Debtor also engaged in foreign currency trading through accounts funded by Hernandez.[9] Finally, the Debtor wrote two books, *Jock Itch* and *Success Right Now*.[10]

In about 2010, Gibson took the Debtor's deposition in aid of execution,[11] but was unable to find a source of recovery. There is no evidence Gibson ever withdrew from representing Appellant in his efforts to collect the $700,000 Florida judgment.

---

[4]     *Id.,* at 2, *in* Appellant's App. at 120.

[5]     *Exhibit 1 to Complaint to Revoke Discharge, Final Default Judgment*, *in* Appellant's App. at 8.

[6]     *Findings of Fact and Conclusions of Law* at 2, *in* Appellant's App. at 120.

[7]     *Id.*, *in* Appellant's App. at 120. VAL operated by leasing purchased cars. After VAL closed the same operation was continued by Vestor LLC. *Trial Tr.* at 32-34, *in* Appellant's App. at 249-251.

[8]     The record indicates these are the only assets mentioned at trial.

[9]     *Findings of Fact and Conclusions of Law* at 2, *in* Appellant's App. at 120; *Trial Tr.* at 66, *in* Appellant's App. at 283.

[10]     *Findings of Fact and Conclusions of Law* at 2, *in* Appellant's App. at 120.

[11]     *Trial Tr.* at 93, *in* Appellant's App. at 310.

On August 6, 2014, the Debtor filed this Chapter 7 bankruptcy case in Colorado.[12] The Debtor listed Appellant as an unsecured creditor (claim amount "unknown"), but did not include an address.[13] As a result, Appellant did not receive the original notice of the bankruptcy filing. On August 18, 2014, the Debtor amended his Schedule F to include Appellant as follows:

> Michael Carns
> C/O James D. Gibson
> 400 Burns Ct
> Sarasota, FL 34236

The claim amount was still listed as "unknown." Along with the Amended Schedule F, the Debtor filed a Rule 1009-1.1 Notice of Amendment to Schedule.[14] The notice listed Appellant and included a certificate of service, which provided that on August 18, 2014, the Debtor mailed the Amended Schedule F, the notice, a 11 U.S.C. § 341[15] Notice, and a Proof of Claim form, all by first class mail, to Appellant c/o Gibson, at the 400 Burns Court address. Gibson claimed he did not receive the documents, and so did not forward them to Appellant. The deadline to file an objection to discharge or to the dischargeability of certain types of debt passed on November 7, 2014.[16] No objections

---

[12] *Findings of Fact and Conclusions of Law* at 2, *in* Appellant's App. at 120.

[13] Appellant was not included in the Debtor's creditor mailing matrix.

[14] *Notice of Amendment of Schedules of Debts and/or Addition of Creditor*, *in* Appellant's App. at 191.

[15] All references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[16] *Findings of Fact and Conclusions of Law* at 2, *in* Appellant's App. at 120.

were timely filed. On November 13, 2014, the bankruptcy court granted the Debtor a discharge and closed the case.

In December 2014, Appellant contacted an aggressive, national collection agency to pursue collection of the Default Judgment.[17] The collection agency told Appellant of the Debtor's bankruptcy case.[18] On August 10, 2015, Appellant moved the bankruptcy court to reopen the case, alleging he had not received notice of the bankruptcy. The bankruptcy court granted the motion. On November 4, 2015, Appellant commenced an adversary proceeding,[19] asserting claims under §§ 727(d)(1) (revocation of discharge) and 523(a)(2)(A) (nondischargeable debt based on fraud).[20]

On October 13, 2016, the bankruptcy court tried the matter.[21] The bankruptcy court entered its *Findings of Fact and Conclusions of Law* (the "Order")[22] on December 19, 2016, ruling Appellant had not met his burden of proof under either claim. On the § 727(d)(1) claim, the bankruptcy court found the Debtor had no fraudulent intent for omitting any assets in his bankruptcy schedules, so there was no basis to revoke the

---

[17]     *Trial Tr.* at 94, *in* Appellant's App. at 311.

[18]     *Id.* at 95, *in* Appellant's App. at 312.

[19]     *Findings of Fact and Conclusions of Law* at 2-3, *in* Appellant's App. at 120-21.

[20]     *Complaint to Revoke Discharge* at 6, *in* Appellant's App. at 6. The claim was not timely. Fed. R. Bankr. P. 4007(c) requires such complaints to be filed within sixty days after the first date set for the § 341 meeting of creditors.

[21]     *Trial Tr.* at 1, *in* Appellant's App. at 218.

[22]     Order, *in* Appellant's App. at 119.

Debtor's discharge. The bankruptcy court also made explicit and implicit findings that

some of the alleged omissions were not material.

With respect to the nondischargeability claim, the bankruptcy court correctly

noted that the relevant section was not § 523(a)(2)(A),[23] pleaded by Appellant, but

§ 523(a)(3). The latter section provides a discharge exception for debts

> neither listed nor scheduled under section 521(a)(1) of this title, with the
> name, if known to the debtor, of the creditor to whom such debt is owed, in
> time to permit—
>
> . . .
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this
> subsection, timely filing of a proof of claim and timely request for a
> determination of dischargeability of such debt under one of such
> paragraphs, unless such creditor had notice or actual knowledge of the case
> in time for such timely filing and request.[24]

The bankruptcy court ruled that Appellant was given timely notice of the

bankruptcy case by the August 18, 2014 notice served on Gibson. Because notice was

timely, the bankruptcy court ruled that Appellant's § 523(a)(3) claim failed.

## III.    STANDARD OF REVIEW

---

[23]    *Id.* at 5, *in* Appellant's App. at 123. Had the bankruptcy court held Appellant strictly to his pleading, Appellant would have lost as a matter of law, since the claim was untimely.

[24]    11 U.S.C. § 532(a)(3). This section "enforces the performance of the debtor's duties under § 521(1) which, in turn, insures creditors receive notice of a case and, thus, due process." *In re Schicke*, 290 B.R. 792, 799 (10th Cir. BAP 2003), *aff'd*, 97 F. App'x 249 (10th Cir. 2004). When a debtor fails to schedule or incorrectly schedules a creditor, "the creditor's right to object to the dischargeability of a debt cannot be time-barred under Fed. R. Bankr. P. 4007(c)." *Id.* at 800.

Appellant argues the bankruptcy court erred in its materiality findings on the § 727(d)(1) claim. Appellant also argues the bankruptcy court erred in finding that he received timely notice of the bankruptcy case because there was no "continued attorney-client relationship between [Appellant and Gibson]"[25] when the August 18, 2014 notice was mailed. Whether Gibson was still Appellant's attorney in the Florida action is a question of fact. [26] Challenged fact findings are reviewed for clear error.[27] A fact finding is "clearly erroneous" when "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made."[28]

Finally, Appellant argues that notice to Gibson was insufficient to afford due process to Appellant. This is a question of law reviewed *de novo.*[29]

## IV.    DISCUSSION

**The bankruptcy court did not err in denying the Appellant's § 727(d)(1) claim.**

---

[25]     Appellant's Br. 11.

[26]     *Villazon v. Prudential Health Care Plan, Inc.,* 843 So. 2d 842, 853 (Fla. 2003) ("[T]he existence and scope of an agency relationship are generally questions of fact.").

[27]     *Wagner v. Wagner (In re Wagner)*, 527 B.R. 416, 429 (10th Cir. BAP 2015) (applying, without comment, clear error review to findings of fact regarding false oaths within the meaning of § 727(a)(4)(A)).

[28]     *LeMaire ex. rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987) (citing *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 510-11 (10th Cir. 1985)).

[29]     *Secs. Inv'r Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.)*, 124 F.3d 1238, 1242 (10th Cir. 1997) (whether due process is provided is a "purely legal issue"); *Parks v. FIA Card Servs. N.A. (In re Marshall)*, 550 F.3d 1251, 1254 (10th Cir. 2008) (stating legal issues reviewed *de novo*).

Section 727(d)(1) provides the bankruptcy court shall revoke a discharge if (1) "such discharge was obtained through the fraud of the debtor;" and (2) "the requesting party did not know of such fraud until after the granting of such discharge."[30] In ruling on § 727(d)(1) claims, bankruptcy courts consider whether the debtor "committed a fraud in fact which would have barred the discharge had the fraud been known."[31] Courts therefore incorporate the grounds for denying the discharge under §§ 727(a)(2)-(5) when ruling on § 727(d)(1) discharge revocation claims.[32]

To deny a debtor's discharge under § 727(a)(4)(A), a trustee or creditor must demonstrate by a preponderance of the evidence that the debtor made a false oath in connection with the case "willfully with intent to defraud," and that the oath related to a material matter.[33] The Tenth Circuit has held that a material omission from a bankruptcy statement or schedule can constitute such a false oath because the debtor has a duty to

---

[30]     11 U.S.C § 727(d)(1).

[31]     *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991) (citing *Artinian v. Peli (In re Peli)*, 31 B.R. 952, 955 (Bankr. E.D.N.Y. 1983)).

[32]     *See generally J&R Inv. v. Anthony (In re Anthony)*, 658 F. App'x. 924, 927 (10th Cir. 2016); *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180-81 (10th Cir. 1991); *Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver)*, 367 B.R. 795, 806 n.14 (Bankr. D.N.M. 2007) (quoting David G. Epstein, Bankruptcy and Related Law in a Nutshell 340 (7th ed. 2005)) (Subsections (2)-(5) "have as their foundation some form of dishonesty or lack of cooperation by the individual debtor."); *Marshall v. Wilson (In re Wilson)*, No. 99-13695-JMD, 2002 WL 1067450, at *5 (Bankr. D.N.H. May 28, 2002) (Section 727(d)(1) claim based on § 727(a)(2)); *Walton v. Staub (In re Staub)*, 208 B.R. 602, 604 (Bankr. S.D. Ga. 1997) (Section 727(d)(1) revocation based on § 727(a)(4) false oath or account).

[33]     *In re Calder*, 907 F.2d 953, 955 (10th Cir. 1990) (citing 4 *Collier on Bankruptcy*, ¶ 727.04[1] at 727-54 to -57 (15th ed. 1987)).

make a true and full disclosure in scheduling assets and completing a statement of financial affairs.[34]

Appellant argues the Debtor made the false oaths by omitting several material assets from his bankruptcy schedules, including his interest in VAL; a prepetition transfer of $5,117 to VAL; his income from VAL; his interest in the foreign exchange trading accounts; and his interest in the two books he wrote.[35]

Both the Tenth Circuit and its Bankruptcy Appellate Panel ("BAP") have recognized the problem in "ascertaining whether a debtor acted with fraudulent intent" is that the "debtor will be the only person able to testify directly concerning his intent," and such testimony may be self-serving.[36] Thus, bankruptcy courts may infer fraudulent intent "by circumstantial evidence, or by . . . [the debtor's] course of conduct."[37] A false

---

[34] *Id.*; 11 U.S.C. § 521(a)(1); *see In re Marrama*, 430 F.3d 474, 478 (1st Cir. 2005) ("The [bankruptcy] statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings . . . . [T]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." (internal quotation marks omitted)), *aff'd sub nom.*, *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007).

[35] Appellant also alleged before the bankruptcy court that the Debtor was not a Colorado resident. Appellant did not press the point at trial, nor argue it on appeal. In his brief, Appellant also complains about the Debtor's "failure[s] to disclose" during discovery. Appellant's Br. 18, 21. All discovery disputes were resolved by the bankruptcy court and are not, in any event, relevant to Appellant's claims under § 727(d)(1). No discovery disputes were mentioned in Appellant's statement of issues on appeal.

[36] *United States Tr. v. Garland (In re Garland)*, 417 B.R. 805, 815 (10th Cir. BAP 2009) (quoting *Calder*, 907 F.2d at 955-56).

[37] *Calder*, 907 F.2d at 956 (quoting *Farmers Co-op. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)).

9

statement caused by mere inaccuracy or inadvertence does not warrant discharge denial.[38] The BAP recognizes certain "badges of fraud," relied upon to determine fraudulent intent including, but not limited to, (1) concealment of prebankruptcy conversions; (2) conversion of assets immediately before the filing of the bankruptcy petition; and (3) the monetary value of the assets converted.[39]

Here, the bankruptcy court found no badges of fraud and made a general finding that the Debtor's failures to disclose assets were without fraudulent intent.[40] We interpret this finding to include all of the allegedly omitted assets. Appellant's statement of issues on appeal does not seek review of the bankruptcy court "no fraudulent intent" finding.[41] Appellant therefore waived his right to challenge the finding.

Even if Appellant had not waived the issue, we would find no error. The bankruptcy court heard the Debtor's testimony and found his denial of fraudulent intent credible. Similarly, the bankruptcy court reviewed Appellant's documentary evidence

---

[38]     *Garrett v. Vaughan (In re Vaughan)*, No. WO-05-028, 2006 WL 751388, at *4 (10th Cir. BAP Mar. 22, 2006) (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294-95 (10th Cir. 1997)).

[39]     *Garland*, 417 B.R. at 815 (quoting *Quicken Loans, Inc. v. Splawn (In re Splawn)*, 376 B.R. 747, 755 (Bankr. D.N.M. 2007)).

[40]     Order at 4, *in* Appellant's App. at 122.

[41]     While Appellant says in his brief that "[f]raudulent intent can further be inferred from the Debtor's failure to disclose numerous assets on his Schedule B," Appellant's Br. 21, this statement is not enough to preserve the argument. *Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989) ("Merely mentioning inherent defects in another context is not enough."); *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004) ("Scattered statements in the appellant's brief are not enough to preserve an issue for appeal.").

and determined it did not support a finding of fraudulent intent. Trial courts generally should be given some leeway to determine the credibility of witnesses and the proper weight of evidence.[42] Having reviewed the record, we cannot say the bankruptcy court clearly erred in finding no fraudulent intent.

Appellant only assigned error to the bankruptcy court's findings about the materiality of allegedly omitted assets.[43] Because fraudulent intent is a prerequisite to any materiality inquiry under § 727(a)(4)(A),[44] our decision not to disturb the bankruptcy court's "no fraudulent intent" finding ends the inquiry. We therefore affirm the judgment against Appellant on his § 727(d)(1) claim.

**The bankruptcy court did not err in concluding that Appellant received timely notice of the bankruptcy case.**

The bankruptcy court found Appellant "received notice of [the bankruptcy] through his attorney, Gibson."[45] The bankruptcy court further found Gibson was

---

[42] *In re Muth*, No. CO-13-055, 2014 WL 1712527, at *6 (10th Cir. BAP May 1, 2014) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (quoting *Lone Star Steel Co. v. United Mine Workers of Am.*, 851 F.2d 1239, 1242 (10th Cir. 1988)).

[43] Appellant's Br. 17.

[44] A false oath under § 727(a)(4)(A) must relate to a material matter. *In re Calder*, 907 F.2d 953, 955 (10th Cir. 1990) (citing 4 *Collier on Bankruptcy,* ¶ 727.04[1] at 727-54 to -57 (15th ed. 1987)). The subject matter of a false oath is material, and "thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)).

[45] Order at 5, *in* Appellant's App. at 123.

11

Appellant's agent,[46] and "had represented [Appellant] in obtaining the Default Judgment and . . . continued to represent [Appellant] in attempts to collect the Default Judgment."[47] Finally, the bankruptcy court found that Gibson was Appellant's "agent in regards to the Default Judgment."[48]

Appellant argues that the bankruptcy court erred because Gibson was his *former* counsel when the August 18, 2014 notice was mailed, and that Appellant did not receive notice of the bankruptcy case in time to file a nondischargeability complaint. Appellant contends that notice mailed to Gibson was insufficient to provide him with his constitutional right to due process or to comply with § 342(a).[49]

Neither § 342(a)[50] nor the due process clause requires the "best" notice, only notice "appropriate" and "reasonably calculated" to apprise creditors of a case.[51] The Supreme Court has held due process requires "notice reasonably calculated, under all the

---

[46]     *Id.* at 6, *in* Appellant's App. at 124

[47]     *Id.*, *in* Appellant's App. at 124.

[48]     *Id.*, *in* Appellant's App. at 124.

[49]     Appellant's Br. 9-10. The parties do not dispute that Appellant had no actual knowledge of the Bankruptcy.

[50]     Section 342(a) provides that notice of a Bankruptcy shall be given "as is appropriate."

[51]     *In re Schicke*, 290 B.R. 792, 803 (10th Cir. BAP 2003), *aff'd*, 97 F. App'x 249, 250 (10th Cir. 2004); *see also Schicke*, 97 F. App'x. 249, 250 (10th Cir. 2004) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[52]

Generally, given a collection attorney's duties to a client, notice provided to the attorney is "reasonably calculated" to be relayed to the client.[53] The Tenth Circuit has held that "notice to a creditor's attorney . . . is ordinarily considered sufficient if the attorney received knowledge of the case while representing the creditor in enforcing the creditor's claim against the debtor."[54] Similarly, the BAP has held that scheduling a creditor in care of an attorney will be reasonably calculated to apprise the creditor of the bankruptcy if "the attorney listed was its agent in matters related to"[55] the judgment subject to discharge in the bankruptcy or the attorney assisted in "matters against a debtor prepetition."[56] The BAP has required "some nexus between the creditor's retention of the attorney and the creditor's issues with the debtor."[57]

---

[52]    *Mullane*, 339 U.S. at 314 (citing multiple Supreme Court cases supporting this premise).

[53]    *Id.*; *see also* Fla. R. Prof. Conduct 1-4.4(a)(3) ("a lawyer shall . . . keep the client reasonably informed about the status of the matter"), (a)(2) ("a lawyer shall . . . reasonably consult with the client about the means by which the client's objectives are to be accomplished"); *see also* Fla. R. Prof. Conduct 4-4.2 ("a lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer" or is authorized to do so by law or a court order.).

[54]    *Schicke*, 97 F. App'x at 251 (quoting 4 *Collier on Bankruptcy* § 523.09[4][a] (15th ed. 2003)).

[55]    *Schicke*, 290 B.R. at 800.

[56]    *Id.* at 803.

[57]    *Id.*

While we agree that mailing notice to a creditor's former counsel is problematic,[58] the record supports the bankruptcy court's finding that Gibson was Appellant's current counsel on August 18, 2014. Nothing indicates that Gibson ever withdrew his representation. Gibson took the Debtor's deposition in aid of execution "a couple [of] years into it," which presumably means several years postjudgment.[59] In December 2014, Appellant hired an aggressive collection firm to pursue collection of his judgment outside of Florida.[60] Appellant told Gibson of this decision. Gibson apparently approved of it, or at least voiced no opposition, saying "I don't think we can do anything for you because this stuff [the Debtor's business dealings] [are] [] all over the place."[61] These facts support the bankruptcy court's finding that Gibson was Appellant's current counsel on August 18, 2014, not his former counsel, and that the scope of representation included collection of the Florida judgment.

Further, Gibson assured Appellant that he would have "got[ten] a hold of [Appellant] immediately" had he received a bankruptcy filing notice.[62] Papers sent by United States mail are presumed received by the addressee, absent evidence to the

---

[58]     *See, e.g., Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013) (notice mailed to counsel who had not represented the creditor for eight years did not comply with due process).

[59]     *Trial Tr.* at 93, *in* Appellant's App. at 310.

[60]     *Trial Tr.* at 94, *in* Appellant's App. at 311.

[61]     *Id.*, *in* Appellant's App. at 311.

[62]     *Trial Tr.* at 97, *in* Appellant's App. at 314.

contrary.[63] The Debtor had Gibson's correct mailing address;[64] nothing indicates the notice mailed to Gibson was returned. Denial of receipt is not enough to rebut the "mailbox" presumption.[65] Because there is no evidence in the record to rebut the "mailbox" presumption, Gibson is presumed to have received notice.[66]

The issue of apparent authority should be mentioned. The authority of an agent may be actual or apparent. While former counsel has no actual authority to act on behalf of a former client, she may retain apparent authority to do so. "Apparent authority originates with expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the

---

[63]    *Hagner v. United States*, 285 U.S. 427, 430 (1932) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193, (1884)) ("[P]roof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); *see*, *e.g.*, *Rosenthal*, 111 U.S. at 193; *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 735 (5th Cir. 1995); *Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 206-07 (9th Cir. 1991); *Denmon v. Runyon,* 208 B.R. 225 (D. Kan. 1997); *In re The Grand Union Co.*, 204 B.R. 864 (Bankr. D. Del. 1997).

[64]    *Trial Tr.* at 95- 97, *in* Appellant's App. at 312-14.

[65]    *In re Loomas,* No. CO-13-017, 2013 WL 5615943 at *4 (10th Cir. BAP Oct. 15, 2013); *In re Eagle Bus. Mfr., Inc.*, 62 F.3d 730, 736 (5th Cir. 1995); *see also Gonzales v. Montoya*, No. 96-2207, 1997 WL 290945, at *1 (10th Cir. May 29, 1997) (holding mere assertion of nonreceipt of a complaint is insufficient to show that the magistrate judge's finding of service is clearly erroneous).

[66]    *See also Velasquez v. Delta Airlines Inc.*, No. 2:07-CV-796 TS, 2008 WL 2225832, at *2 (D. Utah May 29, 2008) (finding plaintiff's denial of receipt did not rebut the presumption that the mailed notice had been received); *Eagle Bus Mfg.,* 62 F.3d at 735 (to the same effect); *Denmon*, 208 B.R. at 227-28 (same); *Loomas*, 2013 WL 5615943 at *4 n.38 ("as the bankruptcy court correctly pointed out, evidence of proper mailing [by the court] raises a rebuttable presumption of delivery . . . mere denial of receipt alone does not rebut the presumption that the mailed item was received") (citations omitted).

principal."[67] "Apparent authority is a form of estoppel [which arises] from 'the authority a principal . . . by his actions or words holds the agent out as possessing.'"[68] "'[A]pparent authority' exists only where the *principal* creates the appearance of an agency relationship."[69] Even if the authority is not actual, it may still be binding upon the principal if apparent.[70]

"The termination of actual authority does not by itself end any apparent authority held by an agent."[71] Rather, "[a]pparent authority ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority."[72]

---

[67] Restatement (Third) of Agency, § 3.03, cmt b (Am. Law Inst. 2006); *see also Regions Bank v. Maroone Chevrolet, L.L.C.*, 118 So. 3d 251, 255 (Fla. 3d Dist. Ct. App. 2013); *City Nat'l Bank of Detroit v. Basic Food Indus., Inc.*, 520 F.2d 336, 337 (5th Cir. 1975) ("[A]n agent's authority need not be conferred in express terms, but may be implied under justifying circumstances."); *Roessler v. Novak*, 858 So. 2d 1158, 1162 (Fla. 2d Dist. Ct. App. 2003) ("Although some agencies are based upon an express agreement, a principal may be liable to a third party for acts of its agent which are within the agent's apparent authority."); *Robbins v. Hess*, 659 So. 2d 424, 427 (Fla.1st Dist. Ct. App. 1995) ("The party alleging the agency relationship bears the burden to prove it . . . .").

[68] *Regions*, 118 So. 3d at 255.

[69] *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. 3d Dist. Ct. App. 2008) (quoting *Izquierdo v. Haileah Hosp. Inc.*, 709 So. 2d 187, 188 (Fla. 3d Dist. Ct. App. 1998)); *Jackson Hewitt, Inc. v. Kaman,* 100 So. 3d 19, 31 (Fla. 2d Dist. Ct. App. 2011) (quoting *Owen Indus., Inc. v. Taylor*, 354 So. 2d 1259, 1261 (Fla. 2d Dist. Ct. App. 1978)).

[70] *Sapp v. City of Tallahassee*, 348 So. 2d 363, 367 (Fla. 1st Dist. Ct. App. 1977) (citing *Mercury Cab Owners' Assoc. v. Jones*, 79 So. 2d 782 (Fla. 1955)).

[71] Restatement (Third) of Agency § 3.11 (Am. Law Inst. 2006).

[72] *Id.*

16

Given the facts of this case, the Debtor could argue that he reasonably believed Gibson represented Appellant on August 18, 2014. As the parties did not raise the issue of apparent authority, however, we will not decide whether Gibson had apparent authority to act for the Debtor on August 18, 2014. We will only note that the reasonableness of a party's belief about a continued attorney-client relationship is fact specific, and depends on the length of time since the last contact with the attorney and/or client, the nature and collection status of the claim, whether any notice of termination or withdrawal had been given, whether either party had moved, and the like.

Based on the foregoing, we hold the bankruptcy court did not err in concluding that the August 18, 2014 notice mailed to Gibson was sufficient under § 342(a) and did not violate Appellant's due process rights. Therefore, the bankruptcy court properly denied Appellant's § 523(a)(3).

## V.    CONCLUSION

The bankruptcy court's determination that Appellant did not meet his burden of proof under §§ 727(d)(1) or 523(a)(3) was not in error. Accordingly, the bankruptcy court's findings, conclusions, and judgment are AFFIRMED.

17